### WELTY v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 5, 1924.)

No. 4056.

1. Army and navy ⟜51½, New, vol. 12A Key-No. Series—War risk insurance; unlawful charges by attorney.

Under the provisions of War Risk Insurance Act, § 13, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), that payment to any attorney or agent for assistance in the preparation and execution of the necessary papers of an applicant shall not exceed $3 in any one case, and making it a misdemeanor to solicit, contract for, charge, or receive any fee or compensation, except as therein provided, the prohibition is limited to payments to be made by, or out of the funds of, the applicant and to dealings with him or on his behalf, and does not extend to dealings with or payments to be made by a third person, who for any reason may desire to assist in the prosecution of the claim.

2. Army and navy ⟜51½, New, vol. 12A Key-No. Series—Attorney may assist in prosecution of claim for war risk insurance.

The provision of War Risk Insurance Act, § 13, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), that no claim agent or attorney shall be recognized in the presentation or adjudication of claims, does not forbid the rendition of services by an attorney in the prosecution of a claim gratuitously, so far as the applicant is concerned.

3. Army and navy ⟜51½, New, vol. 12A Key-No. Series—Indictment of attorney under War Risk Insurance Act held sufficient.

Indictment charging an attorney with contracting for and receiving for his services in connection with presentation and collection of war risk insurance claim of fee in excess of that permitted by Act Sept. 2, 1914, as amended by Act May 20, 1918, held sufficient to charge a violation of section 13 (Comp St. 1918, Comp. St. Ann. Supp. 1919, § 514kk).

4. Army and navy ⟜51½, New, vol. 12A Key-No. Series—When attorney guilty of violating War Risk Insurance Act stated.

If attorney, employed ostensibly by father of insane war risk insurance claimant to collect father's claim against the insane person, knowingly participated in arrangement whereby insane person's guardian waived exemption of the insurance proceeds for purpose of permitting creation of fund from which attorney could be paid without the knowledge of the probate court, finding of indirect and prohibited charge, in violation of Act Sept. 2, 1914, § 13, as amended by Act May 20, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), held warranted, and probate court judgment no defense.

5. Army and navy ⟜51½, New, vol. 12A Key-No. Series—Prosecution for receiving illegal fee for prosecuting claim for war risk insurance; instructions.

In the prosecution of an attorney for receiving an illegal fee for services rendered in connection with a claim for war risk insurance, in violation of War Risk Insurance Act, § 13, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), where there was a conflict in the evidence as to the contract made by defendant, he was entitled to an instruction interpreting the statute and clearly stating what it allowed and what it forbade.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; Paul Jones, Judge.

Criminal prosecution by the United States against Benjamin P. Welty. Judgment of conviction, and defendant brings error. Reversed and remanded.

J. Henry Goeke, of Lima, Ohio, and H. W. Fraser, of Toledo, Ohio (Marshall &

Fraser, of Toledo, Ohio, and Harry O. Bentley, of Lima, Ohio, on the brief), for plaintiff in error.

George E. Reed, Asst. U. S. Atty., of Toledo, Ohio (A. E. Bernsteen and M. A. McCormack, both of Cleveland, Ohio, on the brief), for the United States.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. Defendant was convicted and sentenced to imprisonment for one year and the payment of a fine of $500 under an indictment charging a violation of section 13 of the Act of September 2, 1914, as amended by the Act of May 20, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), the material part of which is quoted in the footnote,[1] in that the defendant, "being then and there an attorney at law, engaged in furnishing such assistance as was required in the preparation and execution of the necessary papers for the presentation and collection of the claim for compensation of Franklin R. Strayer from the Bureau of War Risk Insurance, of the Treasury Department of the United States, * * * because of disabilities resulting from disease contracted in line of duty, * * * did unlawfully, willfully, and knowingly solicit, contract for, charge, and receive a fee and compensation therefor in the sum of one thousand two hundred and seventy-four dollars and sixty-four cents ($1,274.64), which said sum was in excess of * * * three dollars ($3.00) to which * * * defendant * * * was entitled * * * under the provisions of * * * the Act of May 20, 1918."

The indictment arose out of the following circumstances: Franklin R. Strayer became insane only a few days after his arrival in camp. His father maintained him at a sanitarium, incurring heavy expenses. An application for compensation under the War Risk Insurance Act had been refused, on the ground that the condition did not arise while he was in the service. Defendant, who had been a Congressman, was then applied to by the father. The conflict in the facts is whether he was to receive for his services, if successful in securing compensation under the act for Strayer and payment therefrom to the father for the expenses incurred by him on behalf of the son, one-third of the compensation so to be secured for the son, or whether his employment was solely by and on behalf of the father, and his payment to be made solely by the father, of one-third of such sum as might be allowed to the father because of the expenses incurred by him for his son, plus any expenses to which the defendant might be put in the matter.

[1] There can be no question as to the constitutional power of Congress to regulate charges that may be made for services to be rendered to applicants for compensation under the War Risk Insurance Act. Similar provisions have long since been upheld under the Pension Acts.[2] Frisbie v. U. S., 157 U. S. 160, 15 S. Ct. 586, 39 L. Ed. 657. Whether or not Congress may also constitutionally regulate charges to be made by attorneys or agents to others than the applicant and to be paid for by such third persons out of their own means, including therein such part of the applicant's recovery from the government to which they may, as creditors or otherwise, be entitled, need not be determined. In our judgment, Congress has not attempted to exercise such power. While it is true that the language of the act broadly prohibits payment in excess of $3 for assistance in the preparation and execution of the necessary papers, and provides that no claim agent or attorney shall be recognized in the presentation or adjudication of claims, and in the penal clause makes it a misdemeanor to "directly or indirectly solicit, contract for, charge or receive any fee or compensation except as herein provided," the necessary construction of the statute under the rules governing penal acts is to limit the prohibition to payments to be made by or out of the funds of the applicant and to dealings with him or on his behalf; for in the absence of express language, it is not to be assumed that Congress intended to penalize the rendering of

[1] "Sec. 13. * * * The director shall adopt reasonable and proper rules to * * * regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits, of * * * compensation * * * provided for in this act: * * * Provided, however, that payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers shall not exceed $3 in any one case: And provided further, that no claim agent or attorney shall be recognized in the presentation or adjudication of claims under articles two, three and four. * * *

"Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable by a fine of not more than $500 or by imprisonment at hard labor for not more than two years or by both such fine and imprisonment."

[2] 12 Stat. 566.

services at reasonable compensation to a father, or even to a stranger, desirous of performing a charitable act on behalf of an applicant for compensation, and in no manner affecting the property interests of the applicant himself.

[2] As we interpret the statute, it permits a charge of $3 to the applicant himself for services in the preparation and execution of the necessary papers, and prohibits any charge whatsoever to him for any additional services in the prosecution of the claim. Even though claim agents and attorneys are not to be recognized in the presentation or adjudication of claims, the rendering by them of services in the prosecution of the claims, gratuitously so far as the applicant is concerned, is not forbidden.

[3] While the indictment might have been framed with greater particularity in charging the receipt of compensation not merely for services for which the act provides a maximum of $3, but also for services which, if rendered to the applicant, must be gratuitous, nevertheless, in our judgment, especially after verdict, and in the light of the Act of February 26, 1919, c. 48, 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1385a), the indictment sufficiently charges a violation of section 13 as amended.

The vital question in this case was whether or not the defendant indirectly solicited or received compensation out of the funds that belonged to the insane applicant, or whether his dealings were entirely with and on behalf of the father and his compensation to be paid solely out of anything that the father might justly recover from the estate of his son.

If, as the government contends, the amount received was not made up of items of expenses actually incurred under agreement for reimbursement by the father out of his own funds, plus one-third of the balance of the father's fund, that fund being his just claim as allowed by the state court against the estate of his son for expenses actually incurred by him and services actually rendered by him to the son—if, in other words, these proceedings were more or less of a subterfuge intended to hide the actual transaction, and if the actual agreement, though made with the father, was made by him on behalf of his son, and was that the defendant should receive one-third of the amount allowed by the government to the son—then the verdict would be just.

[4] In this connection, it should be noted that by section 2 of the Act of June 25, 1918, amending the Act of October 6, 1917, by adding a new section 28 to article 1 (Comp. St. Ann. Supp. 1919, § 514nn¼) and by section 16, repealing section 311 (Comp. St. 1918, § 514tt), the exemption of compensation money from creditors was extended. Originally it was from "attachment and execution." Section 28 provided that compensation "shall not be subject to the claims of creditors of a person to whom an award is made." This right of exemption was not asserted in the state court by the guardian who had no other property in the boy's estate; the attention of the probate judge apparently was not directed to the right of exemption; it may well be that if it had been called to his attention, he might, in view of the nature of the claim—moneys advanced for absolute necessities of life—have directed the guardian to waive it just as the soldier himself, if sane, could have waived it. If, however, defendant, Welty, with knowledge of this provision, participated in any arrangement whereby the right of exemption was to be waived without knowledge or authority of the court and for the purpose of enabling a fund to be created from the compensation money out of which alone he was to be paid, the jury would be justified in finding therein an indirect and prohibited charge, and the later receipt of payment for services out of funds that belonged to the insane applicant.

[5] By no subterfuge can the prohibited payments be indirectly solicited or received; and while the judgment of the state court may be binding as between the parties thereto—if in fact it be but a step in the carrying out of the subterfuge—the judgment rendered therein affords no defense in this case. There was, however, a sharp conflict in the testimony. It was vital that the jury be carefully instructed as to the sound interpretation of the act and that a clear line of demarcation be drawn between what the law allowed and what it forbade. Such an interpretation was asked for by the defendant and was refused. The trial judge was of the opinion that the language of the act spoke for itself and required no comment.

The government contends in this court that if the defendant contracted originally with the father with reference to a fee in excess of $3, and such contract "related to the claimant's demand against the government, whether the understanding was that Mr. Welty's fee and compensation were to come out of the reimbursement of

the father or not, it was still such a contract as was contemplated by Congress within the meaning of this statute because it was an incentive to prosecute this claim against the government for mercenary reasons and therefore against public policy." We cannot agree to this contention under a sound interpretation of the statute. It but reinforces, however, the propriety of the defendant's request to charge, and satisfies us that the refusal thereof is such error as compels a reversal of the judgment.

Reversed and remanded.