BRYSON, Circuit Judge.
 

 Since the Civil War era, Congress has limited the fees attorneys may charge for representing persons who apply for veterans’ benefits.
 
 See
 
 Act of July 14, 1862, §§ 6-7, 12 Stat. 566, 568. Those limitations were originally implemented “to protect the veteran from extortion or improvident bargains with unscrupulous lawyers” who overcharged for work that consisted mainly of filing uncomplicated forms for pension benefits on behalf of veterans with limited literacy skills.
 
 Walters v. Nat’l Ass’n of Radiation Survivors,
 
 473 U.S. 305, 359-62, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (Stevens, J., dissenting).
 

 For more than 120 years, attorney fees for assisting veterans and their survivors in prosecuting benefit claims were capped at $10.
 
 See 38
 
 U.S.C. § 3404(c) (1988);
 
 Walters,
 
 473 U.S. at 308, 319, 105 S.Ct. 3180. Congress purposely limited the role of lawyers in the veterans’ benefits process in order to protect claimants’ benefits from being diverted to lawyers and to avoid making the claims process adversarial in nature, particularly in light of the highly effective representation provided for free by veterans’ service organizations.
 
 Walters,
 
 473 U.S. at 322, 105 S.Ct. 3180; S.Rep. No. 97-466, at 49 (1982).
 

 In 1988, as part of the statute that provided for judicial review of administrative decisions on veterans’ claims, Congress repealed the $10 fee cap and allowed attorneys to charge reasonable fees to represent claimants, but only under certain circumstances.
 
 See
 
 Veterans’ Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988). The 1988 Act permitted attorneys to charge fees for services rendered after a claim was decided by a regional office of the Department of Veterans Affairs (“DVA”) and the Board of Veterans’ Appeals (“BVA”) issued a final decision on the claim. For services rendered prior to that point in the process, the Act prohibited attorneys from charging claimants for representation.
 
 See
 
 38 U.S.C. § 5904(c)(1). As was the case before the 1988 Act, however, the DVA continued to permit attorneys and non-attorney agents to receive fees or salaries from veterans’ service organizations or other disinterested third parties for prosecuting claims, even in circumstances in which an attorney could not receive a fee from the claimant.
 
 See
 
 38 C.F.R. § 20.609(d) (1992). The regulation addressing disinterested third-party fee payers provides that “[a]n attorney-at-law or agent may receive a fee or salary from an organization, governmental entity, or other disinterested third party for representation of a claimant or appellant even though the conditions set forth in paragraph (c) [regarding fees for services after a final decision by the BVA] have not been met.”
 
 Id.
 

 In December 1997 the DVA proposed to amend the disinterested third-party payer regulation.
 
 Board of Veterans’ Appeals: Rules of Practice
 
 — Attorney
 
 Fee Matters,
 
 62 Fed. Reg. 64,790 (Dec. 9, 1997). After receiving public comment on its proposed amendment, the DVA published the final version of the rule on May 23, 2002.
 
 Board of Veterans’ Appeals: Rules of
 
 
 *1351
 

 Practice
 
 — Attorney
 
 Fee Matters,
 
 67 Fed. Reg. 36,102 (May 23, 2002). The new regulation continued to permit an attorney or agent to receive a salary or fee from a disinterested third party, but it contained three additional provisions with respect to the payment of fees from third parties for work done prior to the final decision of the BVA. First, it prohibited an attorney or agent from charging a fee contingent, in whole or in part, upon whether the matter is resolved favorably to the claimant or appellant. Second, it established a rebut-table presumption that the spouse, child, or parent of the claimant, or a person residing with the claimant, is not a disinterested third party. Third, it required that all agreements for payment by a third party be in writing, be filed with the Board, and include a certification by the attorney or agent that “no agreement, oral or otherwise, exists under which the claimant or appellant will provide anything of value to the third-party payer ... in return for payment of [the attorney’s] fee or salary, including, but not limited to, reimbursement of any fees paid.” 38 C.F.R. § 20.609(d)(2); 67 Fed. Reg. at 36,104.
 

 Carpenter, Chartered (“Carpenter”), a law firm engaged in representing veterans’ benefits claimants, has petitioned this court under 38 U.S.C. § 502 for judicial review of the new regulation. Carpenter asserts that the new regulation is invalid because it is unauthorized by statute, because it is arbitrary and capricious, and because it was issued in violation of the Regulatory Flexibility Act, 5 U.S.C. § 604.
 

 I
 

 Congress granted the Secretary of Veterans Affairs authority “to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws.” 38 U.S.C. § 501(a). Based on that authority, the DVA proposed the challenged amendments to the third-party payer regulation in order to “establish safeguards” relating to the statutory restriction on the payment of attorney fees for services rendered before the BVA’s first final decision on an issue.
 
 See 62
 
 Fed. Reg. at 64,791.
 

 Carpenter argues that the statutory prohibition on the payment of fees prior to the first final decision of the BVA, 38 U.S.C. § 5904(c), applies to fees paid by claimants, not by third parties, and that the DVA’s regulation governing third-party fee payments addresses conduct outside the scope of the statute and is thus
 
 ultra vires.
 
 Although the language of section 5904(c) is broad, it has been construed as applying only to fee payments made by recipients of veteran benefits, and not to payments by disinterested fee payers that are not derived, directly or indirectly, from the claimant or intended beneficiary.
 
 See Welty v. United States,
 
 2 F.2d 562 (6th Cir.1924); U.S. Dep’t of Justice, Office of Legal Counsel,
 
 Legality of State Payments to Attorneys Representing Veterans,
 
 10 Op. Off. Legal Counsel 1, 3 n. 10 (1986). Nonetheless, the fact that section 5904(c) does not prohibit payments by disinterested fee payers does not mean that the DVA may not regulate payments by such fee payers.
 

 The Supreme Court has held that when Congress grants an agency the authority to make such rules and regulations as may be necessary to carry out the provisions of a particular statute, a regulation promulgated pursuant to that authority will be upheld as long as it is “reasonably related to the purposes of the
 
 *1352
 
 enabling legislation.”
 
 Mourning v. Family Publ’ns Serv., Inc.,
 
 411 U.S. 356, 369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973);
 
 Thorpe v. Hous. Auth. of the City of Durham,
 
 393 U.S. 268, 280-81, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Moreover, a regulation is reasonably related to the purposes of the legislation to which it relates if the regulation serves to prevent circumvention of the statute and is not inconsistent with the statutory provisions. See
 
 Thomas Int’l, Ltd. v. United States,
 
 773 F.2d 300, 304-05 (Fed.Cir.1985) (upholding a Treasury Department regulation that guards against evasion of a statutory requirement and is not inconsistent with the statute);
 
 Clifton v. Fed. Election Comm’n,
 
 114 F.3d 1309, 1312 (1st Cir.1997) (“Normally an agency with rulemak-ing power has a measure of latitude where it is dealing with the regulated entity ... and where the rule is reasonably designed to achieve the statute’s goal.... Agencies often are allowed through rule-making to regulate beyond the express substantive directives of the statute, so long as the statute is not contradicted.”);
 
 Ohio v. U.S. Dep’t of the Interior,
 
 880 F.2d 432, 473-74 (D.C.Cir.1989) (agency’s promulgation of accounting and planning requirements “is a perfectly sensible means of ensuring that state trustees obey the statutory command”);
 
 Mattes v. United States,
 
 721 F.2d 1125, 1131 (7th Cir.1983) (upholding Agriculture Department’s denial of registration to operate a stockyard where such denial was necessary to prevent circumvention of a statutory suspension order);
 
 Merged Area X (Educ.) v. Cleland,
 
 604 F.2d 1075, 1080 (8th Cir.1979) (the regulatory “imposition of uniform criteria [as to the meaning of ‘semester hour’ as applied to institutions of higher learning where attending veterans receive educational benefits] is necessary to prevent circumvention of the [statutory] twelve semester hour limit which would occur if each institution could de-fíne ‘semester hour’ as it wished”).
 

 In, light of those principles, the DVA is authorized to issue rules governing attorney fee payments by putatively disinterested third-party payers. In particular, the agency is authorized to issue rules governing the. conduct of third-party fee payers where those rules are designed to prevent circumvention of the statutory prohibition against attorney fee payments made by the claimant or from funds intended for the benefit of the claimant. That is precisely the basis that the DVA gave for adopting the 2002 amendments to its disinterested third-party payer regulation.
 
 See
 
 67 Fed. Reg. at 36,103 (“[T]hese changes are necessary to help enforce statutory limitations on payment that are being violated.... [I]t is our experience that third-party agreements are being used to evade those limitations.”).
 

 Carpenter contends that the 2002 amendments to the disinterested third-party payer regulation are contrary to the statute they purport to implement, 38 U.S.C. § 5904(c), and that the amendments are therefore invalid. While it is true that the statute has been construed not to apply by its terms to third-party fee payers, that does not mean that any regulation of such fee payers is contrary to the statutory policy. Nothing in the statute suggests that Congress intended to immunize third-party fee payers from regulation, and to the extent that third-party payments are used to evade the statutory prohibition against the direct payment of fees from claimants’ assets, the regulation of such third-party fee payments is consistent with the purposes underlying the statute.
 

 
 *1353
 
 Contrary to Carpenter’s contention, this case is quite different from
 
 Brown v. Gardner,
 
 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). In that case, the Supreme Court struck down a DVA regulation that required a veteran who suffered an injury in the course of treatment at a DVA medical facility to demonstrate that the injury was the result of fault on' the part of the treating personnel or an accident during treatment. The Court held that the applicable statute, 38 U.S.C. § 1151, required only that the injury occur as the result of medical treatment or rehabilitation, not as the result of the veteran’s own willful misconduct, and that the statute did not admit of a construction adding a further requirement that the injury be the product of fault or accident. 513 U.S. at 120, 115 S.Ct. 552. In this case, by contrast, there is no inconsistency between the statute, which'prohibits fee payments by claimants, and the regulation, which seeks to prevent circumvention of the statutory prohibition through the use of third-party fee payers. Thus, we reject Carpenter’s broad argument that the DVA lacks statutory authority to regulate disinterested fee payers in any way, or that the DVA’s effort to regulate third-party fee payers is contrary to section 5904(c).
 

 II
 

 We next turn to the question whether the 2002 amendments constituted reasonable means to guard against the circumvention of the statutory policies. The DVA stated that the 2002 amendments to the disinterested third-party payer rule were needed “to help enforce statutory limitations on payment that are being violated.” 67 Fed. Reg. at 36,103. Based on its experience, the agency found that “the majority of third-party [attorney fee] agreements are rather blatant attempts to avoid the restriction, imposed by the Veterans’ Judicial Review Act ... that attorneys may not charge veterans for services which are rendered before the first final Board decision on an issue.” Carpenter argues that those assertions are unsupported by reason or by the rulemaking record.
 

 Carpenter first contends that there is no need to regulate third-party payers in order to prevent circumvention of statutory policy. The DVA, however, pointed to circumstances that justified an inference that at least some third-party fees were being paid out of funds that were intended for the benefit of the claimant. For example, the agency cited evidence that in many cases involving contingent fee arrangements, the third-party payer had the same last name as the claimant or was identified as being a member of the claimant’s family. While that evidence is not conclusive proof that the third parties in question were not disinterested, it is reasonable to infer that in at least some such cases attorneys’ fees were paid from' assets to which the third parties and the claimants both had access. Moreover, it is unnecessary for an agency to prove that circumvention has occurred in the past in order sustain an anti-circumvention regulation as reasonable; a regulation can be justified by a reasonable expectation that it will prevent circumvention of statutory policy in the future.
 
 See FCC v. Nat’l Citizens Comm, for Broad.,
 
 436 U.S. 775, 813-14, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978);
 
 Mortgage Investors Corp. v. Gober,
 
 220 F.3d 1375, 1380 (Fed.Cir.2000). We agree with the DVA that permitting third-party payers to pay attorney fees in cases in which claimants are barred by statute from making such payments presents the
 
 *1354
 
 risk that third-party payers may be used to circumvent the statutory prohibition. Accordingly, it was reasonable for the agency to attempt to prohibit such circumvention.
 

 Carpenter, challenges all three of the amendments to the disinterested third-party payer regulation: the requirement that attorneys certify that third-party fees do not come from the claimant; the presumption that a claimant’s close family members are not disinterested; and the prohibition against third-party contingent fee agreements. We are unpersuaded by the challenges to each of those provisions.
 

 First, it is hard to quarrel with the regulatory requirement that attorneys who enter into third-party fee agreements certify that the claimant has not agreed to reimburse or otherwise compensate the third party for paying the attorney’s fee in connection with the claim. That requirement directly enforces the statutory policy against having claimants pay attorney fees for work done before the first final BVA decision, and it is therefore a manifestly reasonable means of avoiding circumvention.
 

 Similarly, it is reasonable for the agency to define what constitutes a disinterested third party. Although Carpenter argues that the agency did not adduce evidence to support its conclusion that there should be a presumption of interest with respect to a spouse, child, or parent of the claimant, or a person residing with the claimant, the characterization of such persons as unlikely to be disinterested is reasonable on its face and is not the kind of characterization that needs evidentiary support. As the DVA stated in the rule-making proceedings, “persons in such relationships usually have some financial or other interest in the success.of the claim and are therefore unlikely to be disinterested.” The regulation permits the. presumption of interest to be rebutted in the case of such persons. However, the likelihood that such a person is not acting independently of the claimant and that a contingent fee payment by such a person will ultimately be derived from assets that belong to the claimant is sufficiently great that a presumption of interest is permissible even in the absence of direct evidentia-ry support. Accordingly, we cannot agree with Carpenter’s contention that the basis for establishing a rebuttable presumption of interest is irrational.
 

 Carpenter’s principal challenge is to the reasonableness of the DVA’s prohibition of contingent fee agreements with disinterested third parties for work done prior to a final BVA decision on the issue. The DVA explained that in its experience contingent fee agreements have been used to evade the statutory prohibition on claimant-paid attorney fees. The DVA outlined its experience with the usé of contingent fees in connection with third-party fee payers as follows:
 

 In dealing with [the third-party fee payer] exception over the years, we have reviewed fee agreements that list individuals as “disinterested third parties” who appear to be no more than “straw men,” i.e., nominal fee payers who really serve as a mere conduit for a prohibited payment by a claimant or appellant. Typically, such “disinterested third parties” will agree to pay a fee equal to some percentage of the amount of any past-due benefits awarded the claimant, contingent upon a successful outcome. Indeed, some contracts we have reviewed call for payment of a percentage of the actual past-due benefits by these
 
 *1355
 
 third parties, a legally impossible feat because of the nonassignability of veterans' benefits under 38 U.S.C. § 5301.
 

 62 Fed. Reg. at 64,792. The DVA further noted that its experience has shown that contingency fee arrangements “set the stage for a transfer from the veteran to the third party to the attorney.”
 
 Id.
 

 Carpenter argues that the evidence of record does not show that third-party contingent fee agreements have been used to contravene the statutory restrictions. We disagree. Apart from the agency’s statements as to its experience with such agreements, there was evidence in the rulemak-ing record from which the agency could reasonably conclude that third-party contingent fee agreements were being used to circumvent the statute.
 

 First, the agency analyzed a number of third-party fee agreements and discovered that the vast majority of those agreements in which the third party had either the same last name or an identified familial relationship with the claimant were contingent fee agreements. That evidence suggests that many third-party fee payers who used contingent fee agreements were not truly disinterested, and thus that the use of contingent fees in that setting increased the likelihood that the fees would be paid from funds that would otherwise be available to the claimant.
 

 Moreover, several of the comments that the DVA received regarding the proposed amendments to the third-party payer regulation, although intended to be critical, actually buttressed the agency’s showing that it had a legitimate concern about the abusive use of contingent fee agreements by third-party fee payers. For example, one commenter suggested that the DVA abandon the restrictions on third-party contingency fee agreements because “people will violate the law anyway,” which clearly suggests that third-party contingency fee agreements were being used to circumvent the statutory prohibition.
 

 Another commenter stated that without a contingency fee agreement, “I charge a third party a fee of $10,000.00 to handle a case with potentially large back benefits. The case is lost. The third party now hounds the veteran for his money. (He is not supposed to, but this is the real world!)” Implicit in that statement is the recognition that the contingent fee arrangement with a third party is simply an indirect mechanism for obtaining a fee from funds that would otherwise go to the claimant, since in the eommenter’s view such third parties do not expect to shoulder the burden of the fee.
 

 Still another commenter suggested that without third-party contingent agreements claimants would not be able to afford attorneys. That comment, too, indicates that it is the claimants, not disinterested third parties, who are actually paying the attorneys. If a disinterested third party were paying the attorney’s fee, the represented claimant’s ability to pay would be irrelevant.
 

 The problem addressed by the amendments to the disinterested third-party payer regulation is not a new one. More than 75 years ago, the Sixth Circuit considered the intent of Congress in limiting attorneys’ fees for services rendered in obtaining veterans benefits. See
 
 Welly v. United States,
 
 2 F.2d 562 (6th Cir.1924). The court determined that a third party (in that case the claimant’s father), “desirous of performing a charitable act” by paying an attorney on behalf the veteran (his son) would not violate the predecessor of section 5904(c), as long as the fee arrange
 
 *1356
 
 ment did not in any way “affect the property interests of the applicant himself.”
 
 Id.
 
 at 564. However, the court noted that if the fee agreement between the third party and the attorney “were more or less of a subterfuge intended to hide [an] actual transaction” involving payment from the benefit award, the statute would be violated.
 
 Id.
 
 The
 
 Welty
 
 case illustrates the kind of controversy that prompted the DVA regulations and the risk of abuse that the amendments were intended to address.
 

 In light of the evidence in the rulemak-ing record and the analysis provided by the agency in the proposed rulemaking and in connection with the promulgation of the final rule, we conclude that the 2002 amendments to the disinterested third-party payer rule are “rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute.”
 
 Motor Vehicle Mfrs. Ass’n v. State Farm Mut. Auto. Ins. Co.,
 
 463 U.S. 29, 42, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). While the agency might rationally have drawn different conclusions about the seriousness of the problem addressed or the suitability of the particular mechanisms chosen to address the problem, we cannot say that the agency was unreasonable in concluding that third-party fee agreements were being used, or were likely to be used, to circumvent the statutory prohibition on the payment of attorney fees by claimants, nor can we conclude that the method chosen by the agency to address that perceived problem was irrational.
 

 Carpenter argues that restrictions on contingency agreements will impair the ability of claimants to be represented by counsel and will discourage legitimate claims. That argument, however, is addressed more to the prohibition against paid representation than to the regulatory provisions governing third-party payers. When it enacted the 1988 legislation, Congress was aware of the arguments that claimants should have more ready access to counsel during the early phases of the claims process, and Congress rejected those arguments. Given Congress’s determination as to that issue, the 2002 amendments to the agency’s disinterested third-party payer regulation cannot be deemed arbitrary and capricious, and we therefore uphold them.
 

 Ill
 

 The Regulatory Flexibility Act requires an agency to prepare and publish an analysis of the impact of proposed rules on small entities. 5 U.S.C. §§ 603, 604. An agency need not publish such an analysis, however, if the head of the agency certifies that the rule will not “have a significant economic impact on a substantial number of small entities.” 5 U.S.C. § 605(b). That certification must be published in the Federal Register and be accompanied by “a statement providing the factual basis for such certification.”
 
 Id.
 
 In lieu of a regulatory flexibility analysis, the Secretary of Veterans Affairs certified that the disinterested third-party payer rules would “affect only the processing of claims by VA and will not affect small businesses.” 62 Fed. Reg. at 64,792; 67 Fed. Reg. at 36,104.
 

 Carpenter argues that the Secretary’s certification was invalid because the DVA failed to conduct a regulatory flexibility analysis and ignored the facts regarding the impact of the new rule on small entities. The DVA, however, viewed the 2002 amendments not as prohibiting fee arrangements that had previously been permissible, but rather as providing a means
 
 *1357
 
 of enforcing a statutory prohibition that was already in place against the use of claimants’ assets to pay attorney fees for work done prior to the final decision of the BVA on an issue. Thus, because the effect of the amendments would be to prevent fee arrangements that were already unlawful under current statutory standards, they would not have a substantial effect on the legitimate activities of any small entities.
 

 We uphold the Secretary’s conclusion that the amendments are not likely to have a significant effect on a substantial number of small businesses. To the extent that the new regulation imposes reporting and certification requirements, the effect on small businesses is minimal. To the extent that the new regulation adopts a presumption that close relatives of the claimant are not disinterested third parties, it merely provides a mechanism for enforcing a principle that was already implicit in the statutory prohibition against the payment of attorney fees from a claimant’s assets. Finally, to the extent that the new regulation prohibits putatively disinterested third parties from entering contingent fee agreements with attorneys, it was reasonable for the Secretary to conclude that that prohibition would not have a significant economic effect on small businesses because — as the Department explained in its written response to comments on the regulations — there is no legitimate reason for a truly disinterested third party to enter into a contingent fee arrangement.
 
 See
 
 67 Fed. Reg. at 36,103 (“By definition, a disinterested third party will receive no benefit from any award to the veteran, so that the outcome can generate no funds with which to pay the attorney.”).
 

 Even assuming that the disinterested third-party payer regulations will have an effect on the legitimate economic activities of some lawyers who represent veterans’ benefit claimants, the record does not support Carpenter’s contention that a substantial number of small entities will be affected by the new regulation. The record does not establish that a large number of attorneys regularly have contingent fee agreements with putatively disinterested third parties. Moreover, as noted, the continued availability of non-contingency fee agreements with disinterested third parties limits the economic impact that the 2002 amendments may have even on those attorneys who have regularly entered into contingent fee arrangements with third parties in the past. Accordingly, in view of the record as a whole, we cannot say that the Secretary abused his discretion when he certified that the amendments would not have a significant impact on a substantial number of small entities.
 
 See
 
 S.Rep. No. 96-878, at 14 (1980),
 
 reprinted in
 
 1980 U.S.C.C.A.N. 2801 (stating Committee’s intention that an agency’s certification that a rule will not adversely affect small businesses, “if made in good faith and based on sound evidence, shall be granted great deference by the courts”). We therefore conclude that the challenged regulation was within the DVA’s authority to promulgate and was not issued in violation of the Regulatory Flexibility Act.
 

 PETITION DENIED.