OPINION OF THE COURT
Richard M. Platkin, J.
Petitioner Lamar Central Outdoor, LLC, doing business as Lamar Advertising, brings this application pursuant to CPLR article 78 seeking a judgment: (a) annulling respondents’ denial of a permit for the erection of a billboard, and (b) directing respondents to issue said permit. Respondents State of New York, State of New York Department of Transportation, Astrid C. Glynn, Thomas J. Madison, Jr., Nathaniel Ingram and Cheryl M. Duprey oppose the application through an answer. Background
Lamar is in the business of erecting, leasing and selling outdoor advertising signs. Lamar seeks to erect a billboard on real property located at 510-514 North Pearl Street in the City of Albany, an incorporated municipality. The property is located within 660 feet of Interstate 90, part of the interstate highway system.
The property is used as an American Legion Post, also known as the Ninth Ward Memorial and Service League, and continuously has been used in this manner since at least 1962. The American Legion is a “fraternal organization,” as such term is defined by Code of the City of Albany § 375-7 (B).
Pursuant to the code, fraternal organizations such as the American Legion may be located only on property zoned “commercial” (see Code of City of Albany § 375-71 [A] [5]; § 375-73 [A] [1]; § 375-74 [A] [1]). Prior to a recent zoning action by the City, which is at issue on this application, the property had been zoned R2B (a one- and two-family medium density residential district). However, the American Legion’s nonconforming commercial use of the property is lawful, since it predates the enactment of the current zoning code, which has been in effect since 1993.
In late 2003, the City added a section to the code specifying where off-premises signage, including billboards, may be located *185 (billboard zones) (see Code of City of Albany § 307-10 [B]). There is no dispute that the property falls within the City’s duly-designated billboard zone.
On or about August 28, 2006, the City granted Lamar a permit to erect a billboard on the property. Two days later, Lamar applied to respondents for a sign permit for the billboard. Respondents denied Lamar’s application on September 8, 2006 stating as follows:
“As you know, signs visible from the interstate system are permitted only in areas zoned commercial or industrial. The zoning of the area where this sign is to be erected is R2B. The outdoor advertising permit for the above location is denied since it is not in compliance with Section 88 of the Highway Law and the Department’s regulations in Title 17 NYCRR Part 150.5 (b) (1).”
In response, Lamar transmitted to respondents on September 13, 2006 a stipulation between itself and the City, executed in connection with a federal lawsuit. In this stipulation, the City agreed to grant Lamar a variance to erect three new billboards. On September 15, 2006, respondents notified petitioner that they were adhering to their prior determination.
On June 4, 2007, the City of Albany officially rezoned the property from R2B to C-l, a neighborhood commercial district. According to petitioner, this rezoning was intended to reflect the long-standing actual use of the property as the home of a “fraternal organization,” and was part of the City’s comprehensive zoning efforts.
The next day, Lamar submitted a new application to respondents, with a copy of the City’s zoning resolution attached. On June 13, 2007, respondents again denied the application, stating as follows:
“The Department’s prior determination of September 8, 2006 and September 15, 2006 that the permit at the above location be denied as signs visible from the interstate highway system are only permitted in areas zoned commercial or industrial remains unchanged.
“The Department regulation at Title 17 NYCRR 150.5 (b) (1) permits signs to be erected and maintained in the controlled area in commercial or industrial zones. Although you offer supporting documentation that the property on which the sign *186 in question is located is now zoned commercial, this does not [necessarily] change the status of this location to a conforming location for outdoor advertising as noted in the following regulation:
“Federal Regulation reads at Section 750.708 Acceptance of state zoning.
“b. State and local zoning actions must be taken pursuant to the State’s zoning enabling statute or constitutional authority and in accordance therewith. Action which is not part of a comprehensive zoning and is created primarily to permit outdoor advertising structures is not recognized as zoning for outdoor advertising control purposes.
“Since the parcels surrounding this site remain zones R2B and R2A, this action is not part of a comprehensive zoning and these parcels were rezoned primarily for the purposes of permitting this sign. This action cannot be recognized for outdoor advertising control purposes.”
By verified petition, Lamar seeks an order: (a) annulling respondents’ denial of the permit for the erection of the sign on the property as illegal, arbitrary and capricious, and an abuse of discretion, and (b) directing respondents to issue said permit. In defending the challenged determination, respondents argue that the City’s 2007 rezoning of the property as commercial is not recognized under federal or state law because it constitutes “spot zoning” done for the primary purpose of allowing a billboard to be erected. On that basis, respondents contend that the denial of the sign permit was rationally based and, therefore, must be sustained.
Oral argument was held on the application on March 21, 2008. This decision and order follows.
Discussion
A. Federal Law
In enacting the legislation known as the Highway Beautification Act, Congress found and declared that “the erection and maintenance of outdoor advertising signs ... in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty” (23 USC § 131 [a]). In furtherance of that objective, the act provides, in pertinent part:
“In order to promote the reasonable, orderly and ef *187 fective display of outdoor advertising while remaining consistent with the purposes of this section, signs . . . whose size, lighting and spacing, consistent with customary use is to be determined by agreement between the several States and the Secretary, may be erected and maintained within six hundred and sixty feet of the nearest edge of the right-of-way within areas adjacent to the Interstate and primary systems which are zoned industrial or commercial under authority of State law . . . The States shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes, and the actions of the States in this regard will be accepted for the purposes of this Act.” {Id. § 131 [d].)
A regulation promulgated under the authority of the United States Secretary of Transportation, entitled “Acceptance of state zoning,” further provides, in pertinent part:
“State and local zoning actions must be taken pursuant to the State’s zoning enabling statute or constitutional authority and in accordance therewith. Action which is not a part of comprehensive zoning and is created primarily to permit outdoor advertising structures, is not recognized as zoning for outdoor advertising control purposes.” (23 CFR 750.708 [b] [emphasis added].)
In April 2004, the chief counsel of the United States Department of Transportation, Federal Highway Administration (FHWA), issued a legal opinion to the State of Minnesota regarding the federal agency’s interpretation of 23 CFR 750.708 (b). More specifically, the FHWA was asked whether the cited regulation establishes a two-part test regarding local zoning for outdoor advertising, whereby a state or local zoning action would be recognized unless two conditions are met: (1) such action “is not a part of comprehensive zoning,” and (2) the zoning action was done “primarily to permit outdoor advertising structures.”
In the legal opinion, the federal agency advised that it did not interpret its regulation as creating the two-part test apparently called for by its literal language. Instead, the FHWA interprets the text as “differentiating between legitimate commercial or industrial zones and limited purpose areas created primarily to allow outdoor advertising.” Under this interpretation, “Motions that are facially part of comprehensive zoning, but in fact are merely schemes to allow outdoor advertising in rural or res *188 idential areas, are not accepted by the FHWA as valid zoning for purposes of control of outdoor advertising.” In reaching this conclusion, the opinion stated as follows:
“In promulgating § 750.708, the FHWA does three things: First, it differentiates between legitimate, comprehensive zoning authorized by law and actions that are not true zoning. Second, it differentiates between legitimate commercial and industrial zones and limited purpose areas created primarily to allow outdoor advertising. Third, it identifies actions that are facially part of comprehensive zoning but in fact are merely schemes to allow outdoor advertising.
“The intent of § 750.708 is the same as expressed by Congress in the legislative histories cited [with respect to the adoption of the Highway Beautification Act (HBA)]. In the preamble to the final rule, the FHWA explained that ‘[s]ections 750.708(b) and (d) are essential to assure the recognition of only bona fide commercial and industrial zones, rather than rural or residential zoning classifications or attempts to circumvent the intent of Congress.’ . . .
“Thus, a more reasonable interpretation of § 750.708(b) is that it directs the careful examination of a zoning action to make certain that it is a legitimate exercise of zoning powers in furtherance of community-wide planning goals, rather than an attempt to use zoning for the primary purpose of opening up areas for outdoor advertising uses. ‘[A] comprehensive zoning plan is a scheme or formula that reasonably relates the regulation and restriction of land uses, including the establishment of districts therefore, to the health, safety, and welfare of the public, and thus to the police power, and the exercise of the zoning power is limited thereby.’ 101A C.J.S. Zoning and Planning § 39 (1979). Comprehensiveness in the zoning context requires a carefully thought-out plan that is broad in both its purposes and its geographic scope.
“Zoning actions pursuant to a comprehensive plan, as envisioned by § 750.708(b), stand in stark contrast to ‘spot zoning’ or ‘sham zoning.’ . . . If a city or county takes a zoning action that creates spots or strips of land along busy highways zoned ‘commercial or industrial’ when there is no nearby com *189 mercial or industrial activity, a suspicion is created that the zoning was done primarily to allow outdoor advertising. . . .
“The FHWA has never interpreted 23 CFR 750.708(b) as establishing a two-part test. The section does not mean that if there is comprehensive zoning in an area, there can be no further inquiry about zoning that allows billboards in areas that have no commercial or industrial uses. Under this interpretation, a city could enact a comprehensive zoning plan that establishes in a residential area a long, narrow strip along a busy highway, label it an ‘outdoor advertising only’ zone, and claim that it was complying with the HBA because it had ‘comprehensive zoning.’ This would be jarringly inconsistent with the intent of Congress and the FHWA to permit billboards in appropriate zones.
“Even if a city’s action does reflect zoning pursuant to a comprehensive plan, that does not conclusively settle the issue of phony or sham zoning. It creates a rebuttable presumption that the comprehensive plan and zoning decisions pursuant to that plan are valid for purposes of allowing outdoor advertising. A comprehensively zoned area can still, however, contain pockets zoned ‘commercial or industrial’ where the only expected commercial or industrial activity is outdoor advertising. . . .
“To determine whether a zoning action is an attempt to circumvent the HBA, the FHWA would look at various factors: the expressed reasons for the zoning change; the zoning for the surrounding area; the actual land uses nearby; the existence of plans for commercial or industrial development; the availability of utilities (such as water, electricity, and sewage) in the newly zoned area; and the existence of access roads, or dedicated access, to the newly zoned area. No one of the above factors alone is determinative. If a combination of them, however, shows that the zoning action is primarily to allow billboards in areas that have none of the attributes of a commercial or industrial area, the FHWA would not be compelled to accept the zoning action as valid under 23 U.S.C. § 131(d).” (US Department of Transportation, Federal Highway Administration, Legal Opinion on the FHWA’s Interpretation of 23 *190 CFR § 750.708(b), Acceptance of State Zoning for Purposes of the Highway Beautification Act [Legal Opinion], available at http://www.fhwa.dot.gov/ realestate/zoningop.pdf [Apr. 14, 2004], cached at http://www. nycourts.gov/reporter/webdocs/ zoningop.pdf.)
There is no dispute that the property meets the express requirements of 23 USC § 131 (d), since it is located within 660 feet of an interstate highway and is zoned commercial by an incorporated municipality under the authority of state law. In arguing that the commercial zoning of the property is not recognized under federal law, respondents rely on 23 CFR 750.708 (b), contending that the City’s rezoning of the property as commercial in 2007 was not part of comprehensive zoning and was done primarily to permit outdoor advertising structures.
As an initial matter, petitioner contends that the federal agency is without authority to impose the requirements of 23 CFR 750.708 (b). Petitioner contends that this regulation runs counter to the plain text of 23 USC § 131 (d), which provides as follows: “The States shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes, and the actions of the States in this regard will be accepted for the purposes of this Act” (emphasis added). According to petitioner, this broad language conclusively binds the FHWA to the City’s zoning action, taken pursuant to the authority of state law, and, to the extent that the regulation provides otherwise, it must be rejected as ultra vires.
In the alternative, petitioner argues that the City’s zoning actions at issue here, including the establishment of a city-wide billboard zone in 2003, were part of a comprehensive effort to promote the general welfare of the City and its residents. Further, petitioner argues that the primary purpose of the 2007 rezoning action was to conform the property’s official zoning to its long-standing use, which is deemed commercial under the code.
The court sees considerable force in petitioner’s argument that the requirements of 23 CFR 750.708 (b) run counter to the clear and unambiguous language of the statute enacted by Congress. On its face, 23 USC § 131 (d) recognizes the “full authority” of the states to zone property for commercial purposes and goes on to provide that such zoning actions “will be accepted” for purposes of the act.
In arguing that this regulation represents a permissible exercise of agency rulemaking authority, respondents rely upon *191 the need to prevent states and local governments from circumventing the federal statute through the misuse of zoning authority. Respondents fear that localities could misuse their broad authority over zoning to “strip zone” all property within 660 feet of the interstate highway system as commercial, thereby circumventing the act’s restrictions on the placement of billboards in residential or rural areas.
In this connection, respondents direct the court’s attention to the legislative history of 23 USC § 131, as recounted in the legal opinion. The cited legislative history reveals that certain members of Congress and high-ranking executive branch officials were concerned that states might engage in “sham zoning” for the purpose of “allowing] outdoor advertising in questionable areas” (see Legal Opinion at 2, citing S Rep 709, 89th Cong, 1st Sess, at 6 [Sept. 14, 1965]; 89 Cong Rec 26820 [1965] [remarks of Senator Randolph]; 1965 US Code Cong & Admin News, at 3713-3714 [letter of Secretary of Commerce to John C. Kluczynski]). These officials also expressed confidence that the federal agency had the legal authority to disregard such efforts (see id.).
Respondents also rely on the familiar proposition that the interpretation and enforcement of a federal statute by the agency charged with its administration is entitled to considerable deference. On this basis, as well as the legislative history discussed supra, at least one federal district court has upheld the regulation from a challenge similar to that raised here (see State of South Dakota v Volpe, 353 F Supp 335, 343 [D SD 1973]; see also Alper v State, 96 Nev 925, 621 P2d 492 [1980]).
In addition, the court notes that Congress gave the FHWA the authority necessary for “the promulgation of standards, criteria, and rules and regulations, necessary to carry out section[ ] 131. . . of title 23 of the United States Code” (Pub L 89-285, tit III, § 303, 79 US Stat 1033 [Oct. 22, 1965]). It is well established that an agency regulation that serves to prevent circumvention of a statute will be upheld, so long as it is not inconsistent with the text of such statute (see Carpenter, Chartered v Secretary of Veterans Affairs, 343 F3d 1347, 1351-1352 [Fed Cir 2003] [collecting authorities]).
While respondents’ arguments are not entirely without merit, they do not respond directly to petitioner’s straightforward reliance on the plain language of the statutory text. While the court must strive to give effect to the intent of Congress, the primary source of that intention must be the language that Congress *192 used, voted upon and which became law. Here, Congress stated, in clear, broad and unqualified language, that zoning is an issue within the “full authority” of state law and “the actions of the States in this regard will be accepted” (23 USC § 131 [d] [emphasis added]).
Thus, while certain legislators and executive branch officials may have voiced concern that states could circumvent the statute through “sham zoning,” the fact remains that Congress was free to adopt a different statute — one that provided less than full and unqualified deference to state zoning determinations. Indeed, an initial version of the act did precisely that, requiring that such determinations “shall be consistent with the purposes of this section” (see 1965 US Senate Bill S2804; S Rep 709, 89th Cong, 1st Sess, at 6 [Sept. 14, 1965]). Thus, this is not a situation where Congress was silent on the issue of acceptance of state zoning and the federal agency’s adoption of an anticircumvention regulation merely filled a gap in the statutory scheme.
The court is mindful of its obligation to give appropriate deference to FHWA’s interpretation of 23 USC § 131 (d). However, such deference is not and cannot be unlimited. If a statute is clear and unambiguous and provides specific direction, an agency has no authority to enact or enforce conflicting regulations (see e.g. Koshland v Helvering, 298 US 441 [1936]).
While petitioner has raised substantial questions as to whether the requirements of 23 CFR 750.708 (b) exceed the FHWA’s regulatory authority, the court concludes that resolution of this issue is unnecessary under the unique facts and circumstances presented by this application. It is undisputed that the property here has been used in a manner that the City’s code deems “commercial” for more than 45 years. Accordingly, this is not a situation where the actual use of the property is being changed from residential or rural to commercial. Rather, the City’s 2007 rezoning action simply changed the official zoning status of the property to comport with its actual, long-standing, preexisting use.
While 23 CFR 750.708 (b) appears on its face to set forth a straightforward two-part test — state or local zoning shall be respected unless it is “not a part of comprehensive zoning and is created primarily to permit outdoor advertising structures” (emphasis added) — the FHWA does not interpret this language literally. Rather, the federal agency views its regulation as a mechanism for “differentiating between legit *193 imate commercial . . . zones . . . created primarily to allow outdoor advertising [and] . . . mere[ ] schemes to allow outdoor advertising in rural or residential areas.” (Legal Opinion at 1.) Indeed, the opinion closes by again confirming the ultimate objective of the regulation: preventing “billboards in areas that have none of the attributes of a commercial or industrial area.” (Legal Opinion at 6.) Thus, just as the regulation represents a layer of gloss on the statute, the legal opinion adds a thick second layer of gloss atop the regulation.
Given the long history of the property being used in a manner that the City deems commercial and the FHWA’s nonliteral interpretation of 23 CFR 750.708 (b) as a tool for disallowing the placement of billboards in rural or residential areas lacking any of the attributes of commercial areas, the court concludes that federal law does not provide a valid basis for respondents’ refusal to recognize the property’s commercial zoning status. To the extent that respondents concluded otherwise, they erred.
B. State Law and Regulations
Following the enactment of the Highway Beautification Act, New York State adopted implementing legislation, which provides in pertinent part:
“The commissioner of transportation is hereby authorized to control the erection and maintenance of outdoor advertising signs, displays and devices along the interstate and primary highway systems in conformance with the terms of this section and in conformity with the agreement ratified and approved by this section and the national standards promulgated by the secretary of transportation of the United States pursuant to subdivision (c) of section one hundred thirty-one of title twenty-three of the United States code as amended. The commissioner of transportation may provide for a system of registration of outdoor advertising signs, displays and devices which comply with the terms of the agreement, ratified and approved by this section, with the secretary of transportation of the United States.” (Highway Law § 88 [5] [emphasis added]; see Modjeska Sign Studios v Berle, 43 NY2d 468 [1977].)
Pursuant to this grant of legislative authority, respondent Commissioner of Transportation has promulgated regulations limiting billboards to commercial or industrial zones located no more than 660 feet from the interstate system (17 NYCRR 150.5 *194 [b] [1]; see also 17 NYCRR 150.1 [ww] [“Zoned commercial or industrial area means any area which is zoned for business, industry, commerce or trade pursuant to a State or local zoning ordinance or regulation”]).
In arguing that rezoning of the property violates state law and regulations respondents again rely on 23 CFR 750.708 (b), which they contend is incorporated into Highway Law § 88 (5) by dint of its status as a “national standard[ ].” Having concluded that the federal regulation does not provide a valid basis for denying effect to the City’s rezoning of the property as commercial, the court concludes that respondents’ reliance on state law as a basis for sustaining the challenged determination must also fail. While the court recognizes its obligation to give some deference to a state agency’s interpretation of a federal regulation, such deference is not warranted where the federal agency charged with administering the federal statute has adopted a different interpretation of its regulation.
Conclusion
Based on the foregoing, the court concludes that the petition must be granted.
Accordingly, it is ordered and adjudged that respondents’ denial of a sign permit for the erection of a billboard on the subject property is annulled; and it is further ordered, adjudged and decreed that respondents are directed to issue said permit.