## FRISBIE *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 811. Argued and submitted March 4, 1895.— Decided March 18, 1895.

The omission of the formal indorsement of an indictment as "a true bill," signed by the foreman of the grand jury, is not necessarily and under all circumstances fatal, although it is advisable that the indictment should be endorsed.

Such a defect is waived if the objection be not made in the first instance and before trial.

Pleading to an indictment admits its genuineness as a record.

The provision in the act of June 27, 1890, c. 634, 26 Stat. 182, forbidding an agent, attorney, or other person engaged in preparing, presenting, or prosecuting a claim for a pension under that act from demanding or receiving a greater fee than ten dollars for his services is constitutional.

An indictment for violating that provision which describes the defendant as a "lawyer" is sufficient.

The offence against that act is committed when a sum greater than ten dollars has been taken, without regard to the fact whether the pension money has or has not been received.

When the amount of the excess so taken is unknown to the grand jury, it is proper to allege that fact in the indictment.

It is unnecessary to aver a demand for the return of the money wrongfully taken.

The omission to charge that the offence was "contrary to the form of the statutes in such case made and provided and against the peace and dignity of the United States" is immaterial.

On June 27, 1890, Congress passed an act, 26 Stat. 182, c. 634, the fourth section of which is as follows:

"That no agent, attorney, or other person engaged in preparing, presenting, or prosecuting any claim under the provisions of this act shall, directly or indirectly, contract for, demand, receive, or retain for such services in preparing, presenting, or prosecuting such claim a sum greater than ten dollars, which sum shall be payable only upon the order of the Commissioner of Pensions, by the pension agent making payment of the pension allowed, and any person who shall violate any of the provisions of this section, or who shall wrongfully withhold from a pensioner or claimant the whole or any part of a pension or claim allowed or due such pensioner or claimant under this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall, for each and every such offence, be fined not exceeding five hundred dollars, or be imprisoned at hard labor not exceeding two years, or both, in the discretion of the court."

Under this statute an indictment was returned to the Circuit Court of the United States for the Eastern District of Louisiana, the first count of which was as follows:

"The grand jurors of the United States of America, duly empannelled and sworn, in and for the Eastern District of Louisiana, in the said Circuit Court, on their oath present that Henry N. Frisbie, late of the Eastern District of Louisiana, lawyer, on the third day of January, A.D. eighteen hundred and ninety-four, at the city of New Orleans, in the Eastern District of Louisiana, and within the jurisdiction of this court, then and there being a person engaged in preparing, presenting, and prosecuting a claim for pension upon the said United States —— entitled 'An act granting pensions to soldiers and sailors who are incapacitated for the performance of manual labor, and providing for pensions to widows, minor

children, and dependent parents,' approved June 27, 1890, to wit, a claim made by and on behalf of one Julia Johnson, under the said act of Congress, as the widow of Lewis Johnson, deceased, late a soldier in the military service of the United States during the war of the rebellion, to wit, a private in Co. C, 87 Reg., Co. B, 84 U. S. C. Vol. Inf., feloniously and wrongfully did violate the provisions of the fourth section of the said act of Congress, in that he did then and there feloniously and wrongfully demand, receive, and retain of and from the said claimant, Julia Johnson, for his said services in preparing, presenting, and prosecuting her said claim for pension aforesaid a sum of money greater than ten dollars, the exact amount thereof being to the jurors aforesaid unknown."

To this indictment the defendant demurred "on the ground that the law under which said indictment was found is unconstitutional and void, for the reason that Congress has no power to regulate the price of labor nor impair the obligation of contracts. 2. That only the pensioner can make complaint. No case can be maintained unless affidavit is made by pensioner. 3. Charge is not sustained by the claim set out." The demurrer having been overruled he entered a plea of not guilty; a trial was had which resulted in a verdict of guilty. A motion for a new trial having been overruled, the defendant was sentenced to imprisonment for three months. To reverse such judgment he sued out this writ of error.

*Mr. O. B. Sansum* for plaintiff in error submitted on his brief.

*Mr. Assistant Attorney General Whitney* for defendants in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Neither the testimony nor the instructions are preserved in the record, and the only questions presented for our consideration arise on the indictment.

It is objected, in the first place, that the indictment lacks the indorsement, "a true bill" as well as the signature of the foreman of the grand jury. No objection was made on this ground in the Circuit Court, either before or after the trial. There is in the Federal statutes no mandatory provision requiring such indorsement or authentication, and the matter must, therefore, be determined on general principles. It may be conceded that in the mother country, formerly at least, such indorsement and authentication were essential. "The indorsement is parcel of the indictment and the perfection of it." *King* v. *Ford*, Yelv. 99. But this grew out of the practice which there obtained. The bills of indictment or formal accusations of crime were prepared and presented to the grand jury, who, after investigation, either approved or disapproved of the accusation, and indicated their action by the indorsement, "a true bill" or "ignoramus," or sometimes, in lieu of the latter, "not found," and all the bills thus acted upon were returned by the grand jury to the court. In this way the indorsement became the evidence, if not the only evidence, to the court of their action. But in this country the common practice is for the grand jury to investigate any alleged crime, no matter how or by whom suggested to them, and after determining that the evidence is sufficient to justify putting the party suspected on trial, to direct the preparation of the formal charge or indictment. Thus they return into court only those accusations which they have approved, and the fact that they thus return them into court is evidence of such approval, and the formal indorsement loses its essential character. This matter is fully discussed by Beasley, C. J., in *State* v. *Magrath*, 44 N. J. Law, 227, 228; by Moncure, President of the Court of Appeals, in *Price* v. *Commonwealth*, 21 Grat. 846, 856; and by Merrick, J., in *Commonwealth* v. *Smyth*, 11 Cush. 473, 474, the latter saying, "this omission in an indictment is simply the omission of a form, which, if often-times found convenient and useful, is in reality immaterial and unimportant." In each of these cases it was held by the court that the lack of the indorsement was not necessarily and under all circumstances fatal to the indictment. In

1 Bish. Crim. Proc. sec. 700, it is said: "In the absence of a mandatory statute, it is the better view that both the words 'a true bill' and the signature of the foreman may be dispensed with, if the fact of the jury's finding appears in any other form in the record." See also *State* v. *Creighton*, 1 Nott & McC. 256; *State* v. *Cox*, 6 Ired. (Law) 440. In *Gardner* v. *People*, 3 Scammon, 83, 87, the court held that the signature of the foreman, though a statutory requirement, would be presumed if the indictment was recorded.

Nevertheless, as it is not an unvarying rule for the grand jury to return into court only the indictments which they have found, it is advisable, at least, that the indictment be endorsed according to the ancient practice, for such indorsement is a short, convenient, and certain method of informing the court of their action.

The defect, however, is waived if objection is not made in the first instance and before trial, for it does not go to the substance of the charge, but only to the form in which it is presented. There is a general unanimity of the authorities to this effect. In *State* v. *Agnew*, 52 Arkansas, 275, it was held that a statute requiring an indorsement of "a true bill" signed by the foreman was directory; that objection to a lack of such indorsement was waived unless made before pleading. In *McGuffie* v. *State*, 17 Georgia, 497, while holding that the usual practice of indorsement was advisable, the court said that the objection on account thereof was "an exception which goes rather to the form than to the merits of the proceeding," and too late after trial. See also *State* v. *Mertens*, 14 Missouri, 94; *State* v. *Murphy*, 47 Missouri, 274; *State* v. *Shippey*, 10 Minnesota, 223; *People* v. *Johnston*, 48 California, 549; and *Wau-kon-chaw-neek-law* v. *United States*, Morris, (Iowa), 332.

In this connection reference may be made to section 1025, Rev. Stat., which reads:

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or im-

perfection in matter of form only, which shall not tend to the prejudice of the defendant."

The indorsement was no part of the charge against the defendant. If no indictment had in fact been found by the grand jury — in other words, if there was no legal accusation against him — the defendant should have objected on this ground when the court called upon him to plead to this which it assumed to have been properly presented to it. "The very fact of pleading to it admits its genuineness as a record." *State v. Clarkson,* 3 Alabama, 378, 383. Instead of denying the existence of any legal accusation, the defendant demurred to it on the ground of insufficiency, thus abandoning all question of form and challenging only the substance. When the demurrer was overruled he entered a plea of not guilty, and that being determined against him by the verdict of the jury, he interposed a motion for a new trial and one in arrest of judgment, without ever suggesting to the court that there was before it no indictment returned by the grand jury of the district. The objection, now for the first time made, comes too late. Whatever action the Circuit Court might have been compelled to take if the matter had been called to its attention in the first instance, the defect is not one which goes to the substance of the accusation, and will not now avail.

A second objection, insisted upon now as it was by demurrer to the indictment, is that the act under which the indictment was found is unconstitutional, because interfering with the price of labor and the freedom of contract. This objection also is untenable. While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of the liberty of contract, yet such liberty is not absolute and universal. It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts. It may deny to all the right to contract for the purchase or sale of lottery tickets; to the minor the right to assume any obligations, except for the necessaries of existence; to the common carrier the power to make any contract releasing himself from negligence, and, indeed, may restrain all engaged in any employment from any

contract in the course of that employment which is against public policy. The possession of this power by government in no manner conflicts with the proposition that, generally speaking, every citizen has a right freely to contract for the price of his labor, services, or property.

The pension granted by the government is a matter of bounty. " No pensioner has a vested legal right to his pension. Pensions are the bounties of the government, which Congress has the right to give, withhold, distribute, or recall, at its discretion.     *Walton* v. *Cotton*, 19 How. 355."     *United States* v. *Teller*, 107 U. S. 64, 68.

Congress being at liberty to give or withhold a pension, may prescribe who shall receive it, and determine all the circumstances and conditions under which any application therefor shall be prosecuted. No man has a legal right to a pension, and no man has a legal right to interfere in the matter of obtaining pensions for himself or others. The whole control of that matter is within the domain of Congressional power.    *United States* v. *Hall*, 98 U. S. 343. Having power to legislate on this whole matter, to prescribe the conditions under which parties may assist in procuring pensions, it has the equal power to enforce by penal provisions compliance with its requirements. There can be no reasonable question of the constitutionality of this statute.

Again, it is claimed that the indictment is defective in that it describes the defendant as a lawyer and not as an agent or attorney. Of course, the use of the word "lawyer" is not significant; it is a mere *descriptio personæ*. The language of the statute is " no agent, attorney, or other person engaged in preparing," etc. The indictment charges that " defendant then and there being a person engaged in preparing, presenting, and prosecuting a claim for pension upon the said United States . . . by and on behalf of one Julia Johnson." It is immaterial what was his regular profession or avocation. It is sufficient that if even temporarily he engaged in the work of preparing, presenting, and prosecuting a claim for a pension. Doing that he brings himself within the requirements of the statute, and it is enough to charge that he was so engaged,

and that whilst so engaged he did demand, receive, and retain more than the sum which by the statute he was permitted to do.

It is further objected that there is no averment that Julia Johnson, named in the indictment, was a pensioner of the United States, or that any money of any kind or character was ever paid to defendant for her, or that any money was ever paid to any person for her. It is insisted that the purpose of the statute is to protect pension money only, and that until pension money is received the agent or attorney is not within the reach of the statute. We do not so understand it. The guilt or innocence of the defendant does not turn on the question whether he is or is not successful in obtaining the pension which he is applying for, nor whether he takes the sum in excess of ten dollars out of the particular pension money received by the applicant. The scope of the statute and the evident purpose of Congress are to prevent an applicant for pension from being mulcted any sum above ten dollars by any one assisting in the matter. Language expressing such intention cannot be clearer than that used.

To the objection that the amount of the excess over ten dollars demanded, received, and retained by the defendant is not stated, and that any sum, even one cent, would satisfy the averment, it is sufficient to reply that if the amount of the excess was unknown it was proper to allege that fact in the indictment, and, in the absence of any testimony to the contrary, it will be presumed that the amount of the excess was, in fact, unknown to the grand jury. *Coffin* v. *United States,* 156 U. S. 432. The question of the guilt of the defendant does not depend on the amount of the excess. The rule *de minimis non curat lex* has no such application in criminal cases. The stealing of one cent is larceny as truly as the stealing of a thousand dollars. The amount may vary the degree, but it does not change the character of the crime.

It is further urged that the indictment nowhere alleges that any demand was made upon the defendant for the return of the money wrongfully received and retained by him. No such demand need be averred. The case of *United States* v.

*Irvine,* 98 U. S. 450, is not in point. There the charge was of wrongfully withholding pension money, and it was in reference to such charge that the court said : "In short, there must be such unreasonable delay, some refusal to pay on demand, or some such intent to keep the money wrongfully from the pensioner, as would constitute an unlawful withholding in the meaning of the law."

The charge of wrongfully withholding implies the possibility, at least, of a rightful receipt, and the offence consists in failing to turn over to the proper party that which has been thus received. But the charge here is of demanding, receiving, and retaining. It implies that there was wrong in the original exaction, and it is unnecessary to aver a demand upon the defendant to undo such wrong. If he wrongfully demanded and received and still retains the sum so demanded and received, the offence is complete.

So far as respects the objection that the count does not conclude that the offence charged was "contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the United States," it is sufficient to say that such allegation, which is one of a mere conclusion of law, is not of the substance of the charge, and the omission is of a matter of form, which does not tend to the prejudice of the defendant, and is, therefore, within the rule of section 1025 Rev. Stat., to be disregarded.

These are the only matters of objection to this indictment. No one of them is tenable, and, therefore, the judgment is

*Affirmed.*