**UNITED STATES of America ex rel. Milton WILSON, Petitioner-Appellee,**

v.

**Charles ROWE, Superintendent, Illinois Industrial School for Boys, Respondent-Appellant.**

**No. 71–1683.**

United States Court of Appeals, Seventh Circuit.

Dec. 2, 1971.

Rehearing Denied Jan. 3, 1972.

Certiorari Denied April 24, 1972.

See 92 S.Ct. 1618.

William J. Scott, Atty. Gen., Melbourne A. Noel, Jr., James B. Zagel, Asst. Attys. Gen., Chicago, Ill., for respondent-appellant.

Robert H. Aronson, Chicago, Ill., for petitioner-appellee.

Before PELL, STEVENS and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the granting of a petition for a writ of habeas corpus following an evidentiary hearing in the district court.

Milton Wilson was convicted in December, 1970, following a bench trial in the Circuit Court of Cook County, Illinois, on indictment charges of attempted murder, armed robbery and aggravated assault. Although he was a minor, age 15, at the time of the alleged offenses, he apparently was tried under regular criminal procedures because of the gravity of the charged offenses.

A direct appeal was initiated reasonably promptly to the Illinois Appellate Court, the trial record having been filed in that court on April 19, 1971. However, as of the time of oral argument before this court no appellant's brief had been filed in the Illinois Appellate Court. At least three extensions of time for briefing have been granted to Wilson, the last of which carries to the end of the year 1971.

In the interim, however, Wilson's counsel has not ignored his client's case but rather than devoting his efforts to the direct appeal in the Illinois court, he has been primarily concerned with pursuit of the habeas corpus remedy in the federal courts.

Some time in May, 1971, although the trial record had been on file in the Appellate Court approximately only one month, there was filed in the Illinois Supreme Court a motion for leave to file an original petition for writ of habeas corpus. That motion was denied without comment on May 18, 1971. The petition which is involved in this appeal was then filed in the District Court for the Northern District of Illinois on May 20, 1971. The district court, exhibiting appropriate deference to the exhaustion of state remedies requirement of 28 U. S.C. § 2254(b), suggested the seeking of "a denial of an emergency determination

on the petition for writ of habeas corpus alone" in the Illinois Appellate Court without disturbing the pending appeal there. The district court then ordered the cause removed from the calendar with leave to reinstate in forty days.

In accordance with the suggestion of the district court, Wilson filed a "motion to reverse" in the Illinois Appellate Court on June 25, 1971. However, that court ruled that the motion would be "taken with the cases."

Wilson then returned to the district court where that court apparently was satisfied that sufficient steps had been taken at the state level to satisfy the exhaustion requirement and to permit discretionary consideration of the merits of the petition. Upon considering the merits, the court granted the writ.

■ There is no contention here that the State of Illinois does not provide an orderly procedure for direct appellate review of criminal convictions. Further, it has not been demonstrated, and no contrary assertion is made, that the state courts on appeal would give less than full and correct consideration to claimed constitutional errors. The principal, if not the only, complaint is that the state procedure is time-consuming. We do not find this to be a per se reason for federal intervention.

This is particularly true in the present case where the time elapsed is not of the nature to shock judicial conscience. An a fortiori situation actually exists here where the state appellate procedures have not progressed because of the failure to file the appellant's brief, which could have been filed more than six months ago.

■ No doubt others in Wilson's position have and will share his complaint of delays in state appellate review. If each is accorded the opportunity of bypassing the established procedures through the means of asking for emergency out-of-order review of a claimed error, the accumulated backlog of the so-called emergency claims would undoubtedly produce the same congestion that now apparently exists in the normal procedure. We are not unaware of the fact that courts generally are cognizant of and are addressing themselves to the problem of a need for expediting criminal appeals. We express hopeful confidence that progress is being accomplished toward solutions. The answer does not lie, in our opinion, in the procedure here proposed which would tend to make the federal courts appellate reviewing courts of state criminal procedures. This is an office which federal habeas has not been, and is not intended to be, designed to serve.

Wilson purports to find support for his position in a recent decision of this court, Shelby v. Phend, 445 F.2d 1326 (7th Cir. 1971). Reliance on *Shelby* is misplaced as a reading of that case makes it clear that this court found that such strength as the petition might have was predicated "almost entirely" on the merits of an *Escobedo* point, which point *had been* considered and rejected on direct appeal to the Indiana Supreme Court. While this court did not purport to determine the merits of the claims, it is clear that the strength of the non-exhausted two additional claims was not deemed to be of sufficient stature to justify refusal to entertain the petition.

Wilson also urges that since the district court has had an evidentiary hearing, we should in the interest of judicial economy reach the merits of the claimed constitutional error and uphold the district court in his determination thereof. If we read this contention correctly that, looking only at this particular case, it would be more economical of judicial time just to proceed with the case than to send it back, we cannot accept the argument as it smacks of expedient judicial economy and certainly not of long-range judicial economy.

Finally, Wilson analogizes his situation with the express line of a supermarket where one can circumvent the lines with loaded baskets if the purchased packages are six or less. While there might be some merit to a plan

which would induce appellants both in civil and criminal cases to confine their claims of error to those of real significance rather than using the shotgun technique of aiming at all possible errors even though some are patently frivolous or of no consequence, nevertheless, we cannot accept the analogy as applicable to the present issue. We are not certain whether the proposal should be limited simply to one claimed constitutional error presented by the emergency route or whether as many as five or six should be allowed. In any event, it is our intent and purpose to slam the lid firmly on this Pandora's box.

We do not reach the merits of Wilson's contentions as we cannot agree that the district court should have exercised its discretion on the posture of the case before it.

While the record before us does not disclose what points Wilson may raise in his brief eventually to be filed in the Illinois Appellate Court, the ground of complaint both before the district court and that which was sought to be put before the Illinois Appellate and Supreme Courts by the emergency motions was confined to one basis. That basis was that the grand jury indictment was void because, although a sufficient number of the grand jury had voted the indictment, it was not signed by the regularly appointed foreman, he having been absent at the time of the signing and the return of the indictment. Instead it was signed by another juror who had been named by the foreman as acting foreman during the foreman's absence. It was claimed that this procedure was in contravention of Illinois statutes pertaining to the subject. Ill.Rev.Stat. ch. 38, §§ 112–2 and 112–4 (1969).

While the claimed error in state proceedings before the district court did not raise as delicate an issue of state administration of state criminal justice as that involved in the recent per curiam order of the Supreme Court of the United States, Slayton v. Smith, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971), nevertheless, since the matter presumably will be the principal issue raised on direct appeal, we consider the better policy to be to avoid "any implication as to merits" of the subject and nothing herein is intended otherwise.

The district court in granting the writ found that the failure of the state officials to comply with the exact requirements of the Illinois statute was "in direct derogation of not only the express language of the statute but also is inopposite [sic] to the due process dictates of the United States Constitution." Although noting cases such as Frisbie v. United States, 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657 (1895), Gray v. Swenson, 430 F.2d 9, 14 (8th Cir. 1970), and People v. Hangsleben, 43 Ill.2d 236, 238, 252 N.E.2d 545 (1969), cert. denied, 397 U.S. 1048, 90 S.Ct. 1379, 25 L.Ed.2d 661 (1970), we also refrain from deciding whether the procedural deviation here involved in any event is of constitutional proportions.

While the district court found a violation of fundamental principles, the key to our present decision is found in the district court's statement that such violation "gives rise to a federal question and justifies *after the exhaustion of state remedies* a petition for writ of habeas corpus." (Emphasis added.)

While we readily concede that exhaustion is not a jurisdictional requirement and that it does not go to the power of the district court to hear such applications,[1] nevertheless, we are unacquainted with any reason for believing otherwise than that the exhaustion doctrine continues to be a viable force in determining whether the power should be exercised.

The district court did not purport to dispute the necessity for exhaustion before he exercised his power but rather, recognizing the applicability of the doctrine, he found that it had been satisfied by the emergency application to the state appellate courts raising the issue

1. Fay v. Noia, 372 U.S. 391, 430, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

now brought before the district court. Wilson has cited no federal case, and we are unaware of any, which has found exhaustion of state court remedies in a case where a direct state appeal was pending and the delay if any in the normal procedures of direct appellate review at the state level was then resulting from the failure to file the appellant's brief.

We share the district court's expressed concern over the fact that normal direct appellate procedure extends ordinarily over a substantial period of time. However, we cannot find that the answer lies in attempting to make the federal courts an expediting review tribunal. This is not to say that factual situations may not exist wherein the state procedures are "ineffective to protect the rights,"[2] in which case the district court could find the situation appropriate for the exercise of the power. That simply is not the situation in the case before us, where it appears obvious that the petitioner is attempting to substitute federal habeas corpus proceedings for his direct state appeal. See United States ex rel. Sproch v. Ragen, 246 F.2d 264, 265 (7th Cir. 1957).

We have been shown nothing to persuade us that Wilson's contentions, including the one relating to the grand jury indictment, would not receive complete ventilation and merited treatment in the Illinois courts. The present case has not even risen to the dignity found in United States ex rel. Millner v. Pate, 425 F.2d 249 (7th Cir. 1970), involving the question of whether a petitioner must exhaust state post-conviction remedies as opposed to direct appeal relief.

We have already made it clear in Baldwin v. Lewis, 442 F.2d 29, 35 (7th Cir. 1971), that while the exhaustion doctrine is not jurisdictional in the technical sense, the principle of comity gives continued real viability to the doctrine which should be followed unless the state processes are demonstrably ineffective to protect the rights of the petitioner. For recent implied recognition of viability, see also Slayton v. Smith, *supra*.

While we perhaps need to look no further for the raison d'être of the doctrine than the statute, 28 U.S.C. § 2254(b) and (c), and judicial authority beginning with Ex parte Royall, 117 U. S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), nevertheless, the justification has been well summarized in a recent law review article as follows:

> "The significant interests protected by the exhaustion requirement are of two types. First, exhaustion preserves the role of the state courts in the application and enforcement of federal law. Early federal intervention in state criminal proceedings would tend to remove federal questions from the state courts, isolate those courts from constitutional issues, and thereby remove their understanding of and hospitality to federally protected interests. Second, exhaustion preserves orderly administration of state judicial business, preventing the interruption of state adjudication by federal habeas proceedings. It is important that petitioners reach state appellate courts, which can develop and correct errors of state and federal law and most effectively supervise and impose uniformity on trial courts." [Footnote omitted.] Developments in the Law—Habeas Corpus, 83 Harv.L.Rev. 1038, 1094 (1970).

For the reasons stated hereinbefore and following the recommendation of the per curiam order in Slayton v. Smith, *supra*, 404 U.S. 53, 92 S.Ct. 174, 30 L. Ed.2d 209, the judgment of the district court is vacated and the district court is directed to dismiss the petition for failure to exhaust state remedies.

Reversed.

---

2. 28 U.S.C. § 2254(b).