No. 127,354

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHAD WAYNE HARTMAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

Venue is not a jurisdictional matter, but a procedural one. Generally, the proper venue for a criminal prosecution shall be in the county where the crime was committed. In addition, K.S.A. 22-2619(b) provides special venue rules for crimes committed with an electronic device.

2.

Under K.S.A. 22-2619(b), a prosecution for any crime committed with an electronic device may be brought in any county in which (1) any requisite act to the commission of the crime occurred; (2) the victim resides; (3) the victim was present at the time of the crime; or (4) property affected by the crime was obtained or was attempted to be obtained.

3.

Kansas courts have held that venue can be established by reasonable inference from other competent evidence; it need not be established by specific questions and answers. In other words, venue can be established by circumstantial evidence.

1

4.

Electronic solicitation is, by means of communication conducted through the telephone, internet or by other electronic means, enticing or soliciting a person, whom the offender believes to be a child, to commit or submit to an unlawful sexual act. The State may prosecute a person for soliciting a fictitious child, i.e., an adult person pretending to be a child, to commit an unlawful sexual act. For the purpose of establishing venue under K.S.A. 22-2619(b), the adult person acting as the fictitious child is the victim.

5.

For a jury instruction to be clearly erroneous, the court must be firmly convinced the jury would have reached a different verdict had the erroneous instruction not been given. The party claiming error has the burden to show both error and prejudice.

6.

Prosecutorial error is harmless if the State can show beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility the error contributed to the verdict.

7.

A technical error in a grand jury indictment that does not prejudice the defendant's substantial rights does not deprive the district court of jurisdiction.

Appeal from Shawnee District Court; JASON E. GEIER, judge. Oral argument held August 5, 2025. Opinion filed September 5, 2025. Affirmed in part, reversed in part, sentence vacated in part, and remanded.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., MALONE and HURST, JJ.

MALONE, J.: Chad Wayne Hartman appeals his convictions and sentence for electronic solicitation of a child, attempted aggravated indecent liberties with a child, and attempted criminal sodomy with a child. For several weeks, Hartman carried on text conversations, often sexual in nature, with a girl he believed was 14 years old—she was actually an adult decoy. Eventually, Hartman tried to meet the intended victim in Topeka to engage in a sexual encounter but was arrested by law enforcement in a sting operation.

Hartman claims: (1) The State presented insufficient evidence to prove that venue for the electronic solicitation charge was proper in Shawnee County; (2) the district court erred in instructing the jury on the electronic solicitation charge; (3) the prosecutor committed reversible error during closing argument in discussing the proper venue for the electronic solicitation charge; (4) Hartman was denied a fair trial because of cumulative error; (5) an error in the grand jury indictment deprived the district court of jurisdiction; and (6) the district court erred in sentencing Hartman to lifetime postrelease supervision.

We agree with Hartman that the State has failed to show that the conceded prosecutorial error during closing argument was harmless beyond a reasonable doubt. As a result, we reverse Hartman's conviction of electronic solicitation of a child, vacate his sentence for that conviction, and remand for a new trial on that count. We otherwise reject Hartman's claims of error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Hartman is a professional truck driver who lived in Anderson County, Kansas, in 2022. On October 26, 2022, Hartman began communicating with a person identified as "Riley" on an online dating app, MeetMe. Riley gave Hartman her phone number so that he could text her. And Hartman began texting Riley the next day. Soon after they began

3

exchanging texts, Riley told Hartman that she had lied about her age on the dating app and that she was actually 14 years old. Riley said she would understand if Hartman no longer wanted to talk to her, but Hartman replied, "'No, it's fine.'" Riley explained that she was homeschooled and lived with her mother in Shawnee County, Kansas.

In fact, the person who Hartman was communicating with was not a 14-year-old girl named Riley, but an adult woman named H.G. who resided at the time in Harper County, Kansas. H.G. is not affiliated with law enforcement but regularly spends time on dating sites to provide information to law enforcement leading to arrests and convictions of men pursuing sexual encounters with minors.

From the beginning of their communications, Hartman's messages with Riley were often sexual in nature—asking if she would like to cuddle, kiss, and perform various sexual acts, along with several questions about her body, and explicitly telling her that he wanted to have sex with her. After texting with Riley for over a week, Hartman began to suggest that they should meet and possibly go camping. He suggested that they could perform sexual acts when they were finally together including sexual intercourse and oral sex. Soon after, Hartman and Riley started to speak over the phone and made plans for Hartman to meet her in Topeka where, according to the fictitious backstory, she lived with her mother. They planned for Hartman to pick up Riley when her mother was out of town and then take her back to his house in Anderson County to spend the night. Hartman would then return Riley to her home in Shawnee County.

H.G. notified Detective Ryan Myers of the Shawnee County Sheriff's Office about the increasingly sexual nature of Hartman's communications and their plans to meet, and law enforcement began to plan a sting operation to catch Hartman in the act. On November 15, 2022, the day before Hartman was planning to pick up Riley, H.G. travelled to Topeka. That afternoon and evening, Hartman and Riley talked about what they would do when they were together—Hartman said he could not wait to kiss her and

4

to make her "'do more than blush.'" He also said that he wanted to "'[c]uddle, kiss, touch, and kiss [Riley] all over and hopefully, make love to [her] for hours.'"

On the morning of November 16, 2022, the Shawnee County Sheriff's Office conducted their sting operation, which culminated with officers arresting Hartman as he tried to walk to the door of the house where he thought Riley lived. Police found condoms and other sexual novelties in Hartman's car when they searched it. Myers interviewed Hartman after the arrest, and Hartman confessed to his plans with Riley and admitted that he believed she was only 14 years old.

On November 18, 2022, the State filed a complaint/information charging Hartman with electronic solicitation of a child, attempted aggravated indecent liberties with a child, and attempted criminal sodomy with a child. The State later substituted that charging document with a grand jury indictment alleging the same crimes. The district court never held a preliminary hearing on the charges. Hartman waived formal arraignment and the district court scheduled the case for a jury trial.

At trial, the State admitted the voluminous text conversations between Hartman and Riley. The State also presented testimony from H.G., Myers, a sheriff's deputy who participated in the sting operation, and presented the video of Hartman's interrogation. Hartman did not testify. Hartman's trial counsel presented a guilt-based defense to the electronic solicitation charge, arguing the State failed to prove venue was proper in Shawnee County. As for the attempted sex crimes, Hartman's counsel contended that Hartman's planning had not matured into overt acts sufficient for conviction. During closing argument, the prosecutor argued that venue for the electronic solicitation charge was established, in part, by *Riley's* fictitious residence in Shawnee County.

The jury found Hartman guilty of all three counts as charged. At sentencing, the electronic solicitation conviction was designated as the primary offense and Hartman was

5

found to be in criminal history category I. The district court sentenced Hartman to 61 months' imprisonment for the electronic solicitation conviction, a consecutive term of 34 months' imprisonment for the attempted aggravated indecent liberties with a child conviction, and a concurrent term of 34 months' imprisonment for the attempted criminal sodomy with a child conviction for a controlling term of 95 months' imprisonment. The sentences for the attempted sex crimes with a child included lifetime postrelease supervision. Hartman timely appealed the district court's judgment.

*Did the State present sufficient evidence to support Hartman's conviction for electronic solicitation of a child?*

Hartman first argues there was insufficient evidence to support his conviction for electronic solicitation of a child because the State did not present evidence to show that the offense occurred in Shawnee County—that is, he contends the State failed to meet its burden to prove venue. Hartman does not challenge the sufficiency of the evidence supporting his other convictions, and he challenges only the venue element of the electronic solicitation conviction. The State maintains that it established venue under K.S.A. 22-2619(b)(1) and (b)(3), which authorize venue for crimes committed with an electronic device in any county in which a requisite act to the commission of the crime occurred or where the victim was present at the time of the crime, respectively.

When a defendant challenges the sufficiency of the evidence to support their conviction, this court examines whether—after reviewing all the evidence in a light most favorable to the State—it is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In conducting this inquiry, this court will not reweigh evidence, resolve evidentiary conflicts, or pass on the credibility of witnesses. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

"'[V]enue is not a jurisdictional matter, but a procedural one.'" *State v. Barnes*, 320 Kan. 147, 158, 563 P.3d 1255 (2025). It is a necessary fact that must be proven by the State. 320 Kan. at 159. Generally, the proper venue for a criminal prosecution "shall be in the county where the crime was committed." K.S.A. 22-2602. Also, K.S.A. 22-2619(b) provides special venue rules for crimes committed with an electronic device:

> "(b) In addition to the venue provided for under any other provision of law, a prosecution for any crime committed with an electronic device may be brought in the county in which:
> (1) Any requisite act to the commission of the crime occurred;
> (2) the victim resides;
> (3) the victim was present at the time of the crime; or
> (4) property affected by the crime was obtained or was attempted to be obtained."

Kansas courts have held that venue can be established by reasonable inference from other competent evidence; it need not be established by specific questions and answers. *State v. Stevens*, 285 Kan. 307, 325, 172 P.3d 570 (2007). In other words, "[v]enue may be established by circumstantial evidence." *State v. Lieurance*, 14 Kan. App. 2d 87, Syl. ¶ 4, 782 P.2d 1246 (1989).

K.S.A. 21-5509(a) defines electronic solicitation as follows: "Electronic solicitation is, by means of communication conducted through the telephone, internet or by other electronic means, enticing or soliciting a person, whom the offender believes to be a child, to commit or submit to an unlawful sexual act." As the definition states, the offender only needs to *believe* the person being solicited is a child; the person being solicited does not actually need to be a child. Hartman's only challenge is that the State did not present evidence to show the offense occurred in Shawnee County.

The State argues that it established venue in Shawnee County under K.S.A. 22-2619(b)(1) and (b)(3). More specifically, the State argues it presented evidence that

Hartman sent some of the sexual text messages while he was at work in Shawnee County, establishing venue under subsection (b)(1). The State also maintains it presented evidence that H.G., acting as Riley, was in Shawnee County the day before Hartman's arrest when he sent several sexual messages to Riley, establishing venue under subsection (b)(3).

As a brief aside, Hartman contends that K.S.A. 22-2619(b)(2) is unconstitutional. There are several problems with this argument, including that Hartman is raising the constitutional challenge for the first time on appeal and offers no explanation why he failed to raise it before the district court or why this court should consider it now. Thus, Hartman has failed to satisfy Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36); see *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Also, consideration of this argument is unnecessary because the State maintains it provided sufficient evidence to establish venue under subsections (b)(1) and (b)(3), not (b)(2). The State concedes there was no evidence that H.G. was a resident of Shawnee County. Because the constitutionality of subsection (b)(2) would have no impact on whether the State presented sufficient evidence that Shawnee County was the proper venue for the electronic solicitation charge, we decline to address Hartman's constitutional challenge.

Before proceeding further with our analysis, we should clarify who the victim is in the electronic solicitation charge. After all, the proper venue for prosecution can depend on where the *victim* resides or where the *victim* was present at the time of the crime. See K.S.A. 22-2619(b)(2) and (b)(3). The State may prosecute a person for soliciting a fictitious child, i.e., an adult person pretending to be a child, to commit an unlawful sexual act. See, e.g., *State v. Drach*, No. 105,837, 2012 WL 2785911, at *3 (Kan. App. 2012) (unpublished opinion). In this situation, for the purpose of establishing venue under K.S.A. 22-2619(b), our court has held that the adult person acting as the fictitious child is the victim. *State v. Henderson*, No. 120,213, 2020 WL 1658859, at *17 (Kan. App. 2020) (unpublished opinion). So here, H.G. is the victim for the purpose of establishing venue under K.S.A. 22-2619(b). This conclusion makes sense because K.S.A. 21-5509(a)

8

defines electronic solicitation as "enticing or soliciting a person, whom the offender believes to be a child, to commit or submit to an unlawful sexual act." Hartman solicited H.G., whom he believed to be a child, to commit an unlawful sexual act.

Moreover, Kansas' statutory "Bill of Rights for Victims of Crime" defines "victim" as a "*person* who suffers direct or threatened physical, emotional or financial harm as the result of the commission or attempted commission of a crime against such person." (Emphasis added.) K.S.A. 74-7333(b). And, in our criminal statutes, a "person" is defined as "an individual, public or private corporation, government, partnership, or unincorporated association." K.S.A. 21-5111(t). Consistent with these definitions, H.G. is the victim in the electronic solicitation charge, not the fictitious child.

Turning to the evidence that Hartman sent some of the sexual messages to Riley while he was in Shawnee County, the State presented voluminous text conversations between Hartman and Riley. The record shows that Hartman told Riley that he was in Topeka when some of the conversations that turned sexual in nature occurred. Hartman was working as a truck driver for Home Depot and was often in Shawnee County for work; he spent some evenings sleeping in his truck outside work in Topeka while he was texting her. In a conversation on October 31, 2022, Hartman described being in his truck and asked Riley how far she lived from where he was located. Riley responded and asked Hartman where his store was at. Hartman answered "Off Huntoon" and "[Huntoon] and wannamaker." He then made sexual comments about his desire for her to be in the truck with him, sent her pictures, and discussed the sexual activities they could do together.

Viewed in the light most favorable to the State and allowing the jury to make reasonable inferences from the circumstantial evidence presented, these text messages indicate that Hartman was in Shawnee County when he committed some of the requisite acts to the commission of the solicitation offense. This evidence was sufficient to prove that venue was proper in Shawnee County under K.S.A. 22-2619(b)(1).

9

The State also presented evidence that would support a finding that venue was proper in Shawnee County under K.S.A. 22-2619(b)(3), because H.G., the victim, was in Topeka when some of the communications occurred. H.G. came to Shawnee County on November 15, 2022, the day before Hartman planned to pick up Riley. That afternoon and evening, Hartman sent several messages about showering together, kissing, and cuddling; he sent additional sexually suggestive messages the following morning. The State presented sufficient evidence to prove venue under K.S.A. 22-2619(b)(3) as H.G. was in Shawnee County when Hartman sent some of the solicitous communications.

When reviewing the evidence in a light most favorable to the State, there was sufficient evidence—both circumstantial and direct—to establish that venue was proper in Shawnee County under K.S.A. 22-2619(b)(1) or (b)(3). Both Hartman and H.G. were in Shawnee County at certain points when Hartman sent illicit text messages. As such, Hartman's sufficiency-of-the-evidence-based venue challenge fails.

*Did the district court err in instructing the jury on the electronic solicitation charge?*

Hartman next argues the jury instruction on electronic solicitation was erroneous because it stated that one of the ways the State could prove venue for the electronic solicitation charge was by showing that the victim resided in Shawnee County, under K.S.A. 22-2619(b)(2). The State concedes that the venue instruction was factually inappropriate in that regard but maintains that any error was harmless.

Appellate courts follow a three-step process when evaluating jury instruction issues. First, this court uses unlimited review to examine reviewability—that is, whether there are any jurisdictional or preservation issues. Next, this court considers whether the challenged instruction was factually and legally appropriate, i.e., whether any error occurred. Finally, if an error occurred, this court assesses whether that error requires reversal. *State v. Carter*, 316 Kan. 427, 430, 516 P.3d 608 (2022). The first and last step

10

are interrelated because whether a party has preserved a jury instruction issue affects the reversibility inquiry. *State v. Bolze-Sann*, 302 Kan. 198, 209, 352 P.3d 511 (2015).

The district court provided the jury with jury instruction No. 5, which stated:

> "'Crime[s] committed with an electronic device' means the commission of any crime that involves or is facilitated by the use of any electronic device, including all violations of electronic solicitation.
> "A prosecution for any crime committed with an electronic device may be brought in the county in which:
>  1. Any requisite act to the commission of the crime occurred;
>  2. The victim resides;
>  3. The victim was present at the time of the crime."

The State concedes that it presented no evidence that H.G. resided in Shawnee County and the portion of the challenged jury instruction stating that venue was proper in the county in which the victim resides was factually inappropriate. Hartman also argues the jury instruction was legally inappropriate—even though it mirrors the statutory language—because of Hartman's claim that K.S.A. 22-2619(b)(2) is unconstitutional. But we decline to address that argument because the State already concedes the jury instruction was factually inappropriate; thus, erroneous.

Turning to the reversibility inquiry, Hartman contends that because his trial counsel objected to the venue instruction before the district court, we should review his claim under the constitutional harmless error standard—the standard of review for a preserved instruction issue. *Carter*, 316 Kan. at 430. The State disagrees and argues that Hartman's attorney objected to the instruction on different grounds than he is now asserting on appeal and thus any error should be reviewed under the clear error standard. See K.S.A. 22-3414(3); S*tate v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

11

The State is correct that when the basis of an objection to a jury instruction before a district court differs from the basis for the issue raised on appeal, this court reviews for clear error. *State v. Hillard*, 313 Kan. 830, 845, 491 P.3d 1223 (2021). At trial, Hartman's counsel objected to the inclusion of *any* jury instruction about venue, but she did not state the grounds. When the district court asked Hartman's counsel to explain the basis for the objection, she stated, "Well, I don't like it." She then requested that if the court decided to give a venue instruction mirroring the statutory language of K.S.A. 22-2619(b), it should not include subsection (b)(4)—she made no such request about (b)(2). The district court obliged and left out any mention of subsection (b)(4) because it applies only when property is affected by a crime committed with an electronic device. At no point did Hartman's counsel object on grounds that the inclusion of subsection (b)(2) was factually inappropriate—because H.G. did not live in Shawnee County—nor that it was legally inappropriate because it was unconstitutional. Because Hartman's argument on appeal differs from the objection raised at trial, we apply the clear error standard.

For a jury instruction to be clearly erroneous "the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice." *State v. Mendez*, 319 Kan. 718, 727-28, 559 P.3d 792 (2024). Here, the district court instructed the jury on two proper methods to establish venue under K.S.A. 22-2619(b)(1) and (b)(3). As we have discussed, the State presented sufficient evidence to support each method. The district court should have tailored the jury instruction to exclude the language that a case could be brought in the county where the victim resides because no evidence supported that method. But we are not firmly convinced the verdict on the electronic solicitation charge would have been different had the instruction error not occurred. Hartman fails to show the jury instruction was clearly erroneous.

*Did the State commit reversible prosecutorial error during closing argument?*

Hartman next asserts that the State committed reversible prosecutorial error during closing argument by telling the jurors that venue for the electronic solicitation charge could be established, in part, by the evidence of *Riley's* fictitious residence in Shawnee County. He argues the comment was a misstatement of the law and prejudiced his right to a fair trial on the electronic solicitation charge. The State concedes that the prosecutor's comment during closing argument was erroneous but maintains the error was harmless.

This court uses a two-step standard of review to analyze claims of prosecutorial error. First, it must determine whether the prosecutor stepped outside the wide latitude afforded prosecutors "to conduct the State's case in a manner that does not offend a defendant's constitutional right to a fair trial." *State v. Brown*, 316 Kan. 154, 164, 513 P.3d 1207 (2022). While a prosecutor is afforded wide latitude in discussing the evidence, "a prosecutor may not misstate the law applicable to the evidence, comment on witness credibility, or shift the burden of proof to the defendant." *State v. Coleman*, 318 Kan. 296, 302, 543 P.3d 61 (2024); *State v. Liles*, 313 Kan. 772, 777, 490 P.3d 1206 (2021) ("[A] prosecutor commits error by misstating the law.").

If a prosecutorial error occurred, this court then determines whether the error demands a reversal of the defendant's convictions. Because prosecutorial error implicates a defendant's constitutional right to a fair trial, this court applies the constitutional harmlessness test stated in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Prosecutorial error is harmless if the State can show "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1069 (2016). The party benefitting from the error bears the burden of proving harmlessness. *State v. Ward*, 292 Kan. 541, 568-69, 256 P.3d 801 (2011).

13

During closing arguments, the prosecutor made the following comments about venue for the electronic solicitation charge being proper in Shawnee County:

"I want to now go to whether or not this was in Shawnee County, Kansas. And looking at Instruction Number 5, again, this crime committed, was committed in Shawnee County, Kansas. Looking at the second paragraph and in the three numbered paragraphs, prosecution for any crime committed with an electronic device which includes electronic solicitation may be brought in the county, and were brought in Shawnee County, in which any requisite act to the commission of the crime occurred, and with that one, the defendant, specifically for looking at the attempts, he drove up here on November 16th of 2022 to attempt to get Riley back to his house where he could commit criminal sodomy and aggravated indecent liberties with Riley. So we have that evidence for those two crimes.

"For the electronic solicitation, we have evidence from [H.G.] that on the 15th of November, she was in Shawnee County for part of the day and that part of the text conversation between the defendant and her, being Riley, would have occurred while she was in Shawnee County. She did testify she didn't remember exactly when she would have been in Shawnee County, but she remembered she was there. Conversation was had. Further, she also testified to that the defendant was at Home Depot at Huntoon and Wanamaker working and he was texting her different pictures of his cabin inside of his truck, which again, if you look at State's Exhibit 20, which is a screen shot, you can look at those pictures and they are pictures of the bed inside the truck. There is messages that, hey, there's room for you, you being Riley. And that these messages were when the defendant himself were in Shawnee County. So we have evidence that all of these crimes were committed in Shawnee County.

"Number 2, *the victim resides in Shawnee County. Now again, going back to voir dire, we talked about* To Catch a Predator *and whether or not it bothered you, real victim versus fake victim. In this case, the victim is Riley. It is not* [H.G.]. *It is not Detective Myers, or nobody. It is Riley. And where does Riley reside? She resided at 1829 Southwest 2nd Street, which is here in Shawnee County, Kansas. So Number 2 is proven beyond a reasonable doubt, that the victim Riley resided in Shawnee County*.

"And then number 3, the victim was present at the time of the crime. Again, Riley is the victim. There is evidence that the defendant—in that one, goes into number 1

14

a little bit. We have the victim, which is Riley, [H.G.] pretends to be her. She's in Shawnee County sometimes. The defendant is in Shawnee County sometimes. The State has proven that venue is correct and that these crimes were all committed in Shawnee County, Kansas." (Emphasis added.)

On appeal, the State recognizes that because Riley was not a real person, the victim was H.G. As such, the State concedes that the prosecutor's comment that Riley's residence in Shawnee County established venue was erroneous. Even so, the State argues the error was harmless. But the State's argument that the error was harmless is limited to its assertion that the prosecutor also argued other correct grounds to establish venue and there was evidence to support these grounds. Thus, the State concludes there is "no likelihood" the verdict would have been different without the error. We are not so sure.

As Hartman points out, the jury asked two questions during its deliberations. First, the jury asked: "Are we permitted to consider 'Riley' the victim or not?" The district court replied: "You do not need the Court's permission to consider 'Riley' the victim or not." The second question the jury asked was: "How did [prosecutors] decide to charge the defendant in Shawnee County?" The district court responded: "How the State decides to charge a case is not an issue in this matter." Hartman has raised no issue on appeal about the propriety of the district court's responses to the jury's questions. But at the very least, the questions reflect that the jury was focused on the venue for the electronic solicitation charge and had questions about that aspect of the case.

It is not just the jury questions that give us pause for concern. As we have discussed, when viewing the evidence in the light most favorable to the State, there was sufficient evidence to establish venue under K.S.A. 22-2619(b)(1) because Hartman sent some illicit texts while he was working in Shawnee County, and there was sufficient evidence to establish venue under K.S.A. 22-2619(b)(3) because Hartman sent some illicit texts on the one day that H.G. had travelled to Shawnee County. But this evidence

15

was far from overwhelming. On the other hand, the State introduced into evidence nearly 600 pages of screen shots of texts between Hartman and Riley. These voluminous text messages along with H.G.'s trial testimony made it clear that Riley's fictitious residence was in Topeka. For the prosecutor to tell the jury during closing argument that Riley was the victim in the case and that venue could be established by Riley's fictitious residence in Topeka was a misstatement of the law and a serious error. The error certainly made it easier for the jury to find Hartman guilty of committing electronic solicitation in Shawnee County, if the jury was struggling with this issue at all.

As we explained in the last section of this opinion on the claimed jury instruction error, we are not firmly convinced by Hartman that the jury would have reached a different verdict had the erroneous instruction not been given. But the reversibility standard for prosecutorial error is different from the clear error standard for instructional error, and the shoe is now on the other foot concerning the burden of proof. The State concedes it committed prosecutorial error at Hartman's trial. For the error to be found harmless, the burden is on the State to show beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. *Sherman*, 305 Kan. at 109.

Considering the entire record, we conclude the State fails to show beyond a reasonable doubt that the prosecutorial error was harmless. We cannot be sure the jury would have convicted Hartman of electronic solicitation had the prosecutor properly confined his arguments to establishing venue under K.S.A. 22-2619(b)(1) and (3). Thus, we reverse Hartman's conviction of electronic solicitation of a child, vacate his sentence for that conviction, and remand for a new trial on that count. We observe that because Hartman was found at sentencing to be in criminal history category I, the reversal of his electronic solicitation conviction does not affect the sentence the district court imposed for Hartman's other two convictions. Finally, based on this disposition, we need not address Hartman's claim that he was denied a fair trial because of cumulative error.

16

*Did an error in the grand jury indictment deprive the district court of jurisdiction?*

Hartman next contends that an error in the grand jury indictment deprived the district court of jurisdiction because the indictment was not endorsed by the presiding grand juror as "'a true bill.'" Hartman's claim is an unusual one. Hartman is not arguing that he was prosecuted on a defective complaint or indictment. Rather, he argues there is no indication in the record that a grand jury, in fact, ever returned an indictment on any of the charges against him. As a result, he contends that all proceedings held on the State's purported indictment were "a legal nullity." The State maintains that the indictment's lack of an explicit endorsement as "'a true bill'" was merely a technical error that did not prejudice Hartman and does not necessitate reversal of his convictions.

Whether subject matter jurisdiction exists is a question of law subject to unlimited review. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). And although Hartman did not raise any issue with the indictment before the district court, subject matter jurisdiction can be raised at any time. 304 Kan. at 784 ("The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time."). The State agrees that subject matter jurisdiction can be challenged at any time.

We will review the facts. The State initiated its case against Hartman by filing a "Complaint/Information" charging Hartman with one count of electronic solicitation of a child believed to be 14-16 years old, one count of attempted aggravated indecent liberties with a child by engaging in sexual intercourse with a child 14-16 years of age, and one count of attempted criminal sodomy with a child 14-16 years of age. About a month later, the State moved to substitute the complaint with an indictment, explaining that a sitting grand jury had returned a true bill after finding probable cause and had indicted Hartman on the same charges. The indictment stated that the grand jury did "find, charge, and present" the three charges against Hartman, and it was signed by the presiding grand

17

juror. But as Hartman notes, the presiding grand juror did not circle either of the listed options of "A TRUE BILL" or "NO TRUE BILL" above the signature.

Hartman's challenge is a statutory one. Hartman correctly claims that before a prosecution may commence upon an indictment, 12 or more grand jurors must concur that the State's charge is supported by probable cause. K.S.A. 22-3011(a). He contends that to document such concurrence, a presiding grand juror must: (1) sign the indictment *and* (2) endorse the indictment as "a true bill." K.S.A. 22-3011(a). Hartman argues that the record does not establish that this process was completed.

Although such a challenge has apparently not been addressed by a Kansas court, other jurisdictions—and even the United States Supreme Court—have addressed similar situations where an indictment lacked an explicit endorsement of the words "a true bill" and have concluded that such a defect should not be treated as fatal. See *Frisbie v. United States*, 157 U.S. 160, 163-65, 15 S. Ct. 586, 39 L. Ed. 657 (1895); *Quintana v. Myers*, 108 Ariz. 95, 97, 492 P.2d 1202 (1972). The *Frisbie* Court noted that various states had dealt with such an issue and found that their statutes requiring an endorsement of the phrase "a true bill" were merely directory, and that any objection to such a defect is waived if not brought before trial, "for it does not go to the substance of the charge, but only to the form in which it is presented." 157 U.S. at 164 (citing *State v. Agnew*, 52 Ark. 275, 12 S.W. 563 [1889]; *McGuffie v. State*, 17 Ga. 497 [1855]; *State v. Mertens*, 14 Mo. 94 [1851]; *Wau-kon-chaw-neek-kaw v. United States*, 1 Morris (Iowa) 332, 335, 1844 WL 1300 [1844]). This line of precedent, while old and not applying Kansas' statute, supports the State's contention that Hartman's alleged error is more like a technical defect and not fatal to jurisdiction.

But the biggest problem with Hartman's claim is that the State has added to the record a document entitled "Grand Jury Concurring In The Finding Of Indictment." This document reflects that 12 of the 15 grand jurors voted "yes" and concurred in the finding

18

to indict Hartman on the charges of electronic solicitation, attempted aggravated indecent liberties, and attempted criminal sodomy on December 28, 2022. The document is signed by the presiding grand juror and also signed by the district court judge assigned to supervise the grand jury proceedings. This document satisfies the statutory requirements in K.S.A. 22-3011(a) and contradicts Hartman's claim that there is no indication in the record that a grand jury, in fact, returned an indictment on the charges against him.

Based on the record, we reject Hartman's claim that an error in the grand jury indictment deprived the district court of jurisdiction. Instead, we agree with the State's contention that any error in the grand jury indictment was merely a technical error that did not prejudice Hartman's substantial rights and does not necessitate reversal of his convictions. See *Ward*, 292 Kan. 541, Syl. ¶ 6 (applying harmless error tests at K.S.A. 60-261 and K.S.A. 60-2105 to errors that infringe on defendant's statutory rights).

*Did the district court err in sentencing Hartman to lifetime postrelease supervision?*

Finally, Hartman contends the district court erred in sentencing him to lifetime postrelease supervision for his convictions of attempted aggravated indecent liberties with a child and attempted criminal sodomy with a child. He makes two claims. First, he raises an illegal sentence claim premised on his theory that he was sentenced for a "greater" sexually violent offense, despite having been charged and convicted of a "lesser" offense. He argues that criminal charges are defined by their elements and "constitutionally speaking, an 'element' is any fact that must be proven to either create, or increase, a defendant's exposure to punishment." Second, he claims directly that because a jury never found that he was over the age of 18 when he committed the offenses, the district court could not lawfully impose lifetime postrelease supervision.

The State argues that we should not address Hartman's sentencing claims for the first time on appeal. Alternatively, the State asserts that it presented uncontested evidence

19

at trial that Hartman was over the age of 18 when he committed the offenses, so any error by the district court in imposing lifetime postrelease supervision was harmless.

Hartman acknowledges he is raising both claims for the first time on appeal. As for his first argument, Hartman asserts that under K.S.A. 22-3504 a defendant may raise an illegal sentence claim for the first time on appeal. As for his second argument, Hartman asserts that an appellate court may review the merits of a constitutional claim for the first time on appeal when:  (1) the claim presents a purely legal question arising on undisputed facts and is finally determinative of the case; or (2) it is necessary to review the claim to prevent the denial of fundamental rights.

We decline to address Hartman's sentencing claims for the first time on appeal. Despite his arguments to the contrary, Hartman's illegal sentence claim is merely a constitutional *Apprendi* challenge in disguise. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). And the Kansas Supreme Court has held that K.S.A. 22-3504 does not cover a claim that a sentence is illegal because it violates a constitutional provision. *State v. Warrior*, 303 Kan. 1008, 1010, 368 P.3d 1111 (2016). As for the exceptions to the preservation rules, an appellate court's decision to review an unpreserved claim under an exception is prudential; even if an exception applies, the appellate court is not obligated to review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). As our court has recently stated:

> "There is a good reason for this rule. Appellate courts are designed to review decisions made by the trial courts, not to serve as forums for introducing new arguments or evidence. This principle ensures that trial courts have the first opportunity to address and resolve issues, promotes judicial efficiency, and prevents unfair surprises to the opposing party. If exceptions are routinely invoked, the rule becomes meaningless and its goals elusive." *State v. Bednarz*, No. 126,821, 2025 WL 2265714, at *3 (Kan. App. 2025) (unpublished opinion).

Affirmed in part, reversed in part, sentence vacated in part, and remanded.